IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACORDA THERAPEUTICS, INC. and ALKERMES PHARMA IRELAND LIMITED, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:14-cv-00935-LPS |
| | ) | |
| MYLAN PHARMACEUTICALS INC. and MYLAN INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO MYLAN'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

OF COUNSEL:

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Aaron Stiefel
Daniel P. DiNapoli
Benjamin C. Hsing
Soumitra Deka
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

Sylvia M. Becker
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
(202) 683-3500

*Attorneys for Acorda Therapeutics, Inc. and
Alkermes Pharma Ireland Limited*

Anthony Michael
ACORDA THERAPEUTICS, INC.
420 Saw Mill River Road
Ardsley, NY 10502
(914) 326-6825

September 8, 2014

## Table of Contents

I.     NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.    SUMMARY OF THE ARGUMENT ...............................................................................1

III.   FACTUAL BACKGROUND ...........................................................................................3

       A.     The Instant Litigation ..........................................................................................3

       B.     Mylan's Continuous And Systematic Contacts With Delaware............................5

IV.   MYLAN HAS CONSENTED TO GENERAL PERSONAL
        JURISDICTION IN THIS COURT BY REGISTERING TO DO
        BUSINESS AND APPOINTING AN AGENT FOR SERVICE OF
        PROCESS PURSUANT TO DELAWARE LAW ............................................................7

       A.     Under Governing Delaware Law, Mylan Expressly Consented To
             General Jurisdiction ............................................................................................7

       B.     Mylan's Express Consent Makes A Traditional "Minimum
             Contacts" Analysis Unnecessary .....................................................................11

       C.     Mylan's Arguments Aimed At Avoiding The  Dispositive Impact
             Of *Sternberg* Are Unavailing ...........................................................................13

       D.     This Court's Exercise Of Jurisdiction Over Mylan Is Entirely Fair ...................15

V.     THIS COURT HAS GENERAL PERSONAL  JURISDICTION OVER
        MYLAN UNDER *DAIMLER* ........................................................................................16

VI.   THIS COURT HAS SPECIFIC JURISDICTION OVER MYLAN ..............................19

VII.   CONCLUSION ...........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995)..............................................................................20

*Bancorp Bank v. Blackburn*,
C.A. No. 13-205-LPS, 2014 U.S. Dist. LEXIS 115752 (D. Del. Aug. 20,
2014)(Stark, J.)............................................................................... 2, 11, 15, 17

*Bane v. Netlink, Inc.*,
925 F.2d 637 (3d Cir. 1991) ..................................................................... 8, 11, 12

*Bauman v. DaimlerChrysler AG*,
No. C-04-00194, 2005 U.S. Dist. LEXIS 31929 (N.D. Cal. Nov. 22, 2005) .........................19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................................21

*Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*,
857 F. Supp. 2d 489 (D. Del. 2014) .........................................................7, 17

*Continental Casualty Co. v. American Home Assurance Co.*,
61 F. Supp. 2d 128 (D. Del. 1999) .............................................................10

*D'Angelo v. Petroleos Mexicanos*,
378 F. Supp. 1034 (D. Del. 1974) ...............................................................9

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ...................................................................passim

*E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*,
Civ. A. No. 11-773-SLR-CJB, 2012 U.S. Dist. LEXIS 140037 (D. Del. Sept. 28,
2012)................................................................................19

*Eli Lilly & Co. v. Sicor Pharm., Inc.*,
1:06-CV-238-SEB-JMS, 2007 U.S. Dist. LEXIS 31657 (S.D. Ind. Apr. 27, 2007)...............18

*Ex parte Schollenberger*,
96 U.S. 369 (1877) ...............................................................................8

*General Contracting & Trading Co. v. Interpole, Inc.*,
940 F.2d 20 (1st Cir. 1991)..........................................................................7

*Glaxo Inc. v. Genpharm Pharm., Inc.*,
796 F. Supp. 872 (E.D.N.C. 1992) .................................................................22

*Goodyear Dunlop Tires Operation, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ........................................................................ 7, 13, 19

*Hadley v. Shaffer*,
    Civ. A. No. 99-144-JJF, 2003 U.S. Dist. LEXIS 14106 (D. Del. Aug. 12, 2003)................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .......................................................................................7

*Holloway v. Wright & Morrissey, Inc.*,
    739 F.2d 695 (1st Cir. 1984)..........................................................................12

*In re Mid-Atlantic Toyota Antitrust Litigation*,
    525 F. Supp. 1265 (D. Md. 1981) ............................................................. 14, 15

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) .......................................................................................7

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .......................................................................................7

*King v. Am. Family Mut. Ins. Co.*,
    632 F.3d 570 (9th Cir. 2010) ..................................................................... 8, 14

*Knowlton v. Allied Van Lines, Inc.*,
    900 F.2d 1196 (8th Cir. 1990) .......................................................................12

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*,
    308 U.S. 165 (1939) ................................................................................. 8, 10

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010).....................................................................20

*Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*,
    243 U.S. 93 (1917) .......................................................................................10

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952) .....................................................................................14

*Pfizer Inc. v. Sandoz Inc.*,
    Civ. A. No. 09-742-JJF, 2010 WL 256548 (D. Del. Jan. 20, 2010) ........................4

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
    547 F. Supp. 2d 365 (D. Del. 2008) ...............................................................19

*Ratliff v. Cooper Labs., Inc.*,
    444 F.2d 745 (4th Cir. 1971) ........................................................................14

*Rockefeller Univ. v. Ligand Pharm.*,
    581 F. Supp. 2d 461 (S.D.N.Y. 2008) ........................................................... 12, 16

*Siemer v. Learjet Acquisition Corp.*,
    966 F.2d 179 (5th Cir. 1992) .................................................................................. 14

*Sternberg v. O'Neil*,
    550 A.2d 1105 (Del. 1988) ............................................................................... passim

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .......................................................................................... 21

*Wilson v. Humphreys (Cayman) Ltd.*,
    916 F.2d 1239 (7th Cir. 1990) ............................................................................... 14

*WorldCare Ltd. v. World Insurance Co.*,
    767 F. Supp. 2d 341 (D. Conn. 2011) .................................................................... 15

**STATUTES**

8 Del. C. § 371 ......................................................................................... 1, 5, 8, 9

8 Del. C. § 376 ............................................................................................ 1, 5, 9

8 Del. C. § 376(a) .............................................................................................. 9

8 Del. C. § 381 ................................................................................................. 16

10 Del. C. § 3104(c) .......................................................................................... 17

10 Del. C. § 3104(c)(1) ...................................................................................... 20

10 Del. C. § 3104(c)(4) .................................................................................. 17, 20

18 Del. C. § 524 ............................................................................................... 10

24 Del. C. § 2450 .............................................................................................. 5

21 U.S.C. § 355(j)(5)(B)(iii) ................................................................................. 4

35 U.S.C. § 271(e)(2) ........................................................................................ 20

Minn. Stat. § 303.10 ......................................................................................... 12

**OTHER AUTHORITIES**

Fletcher Cyclopedia of the Law of Corporations, 18 Fletcher Cyc. Corp. § 8641 (Sept.
    2014) ................................................................................................................ 13

V. Alexander, Practice Commentaries, McKinney's CPLR § 301 at C301:6 (West 2001)........................................................................................................................16

Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1116 (3d ed.) ....................................................13

I.    **NATURE AND STAGE OF THE PROCEEDINGS**

On August 20, 2014, defendants Mylan Pharmaceuticals Inc. ("Mylan Pharma")

and Mylan Inc. (collectively, "Mylan") moved to dismiss the Complaint (D.I. 1) for lack of

personal jurisdiction.  (Mylan's Mot. To Dismiss Pls.' Compl. for Lack of Personal Jurisdiction)

(D.I. 10).  Plaintiffs Acorda Therapeutics, Inc. ("Acorda") and Alkermes Pharma Ireland Limited

("Alkermes"; collectively, "Plaintiffs") respectfully submit this brief in opposition to Mylan's

motion.

II.    **SUMMARY OF THE ARGUMENT**

Notwithstanding that Mylan regularly litigates patent infringement cases in this

district and that the seven other generic manufacturers that Plaintiffs have sued for infringing the

patents-in-suit all have agreed to jurisdiction in this Court, Mylan argues that this case should be

dismissed for lack of personal jurisdiction, which would force Plaintiffs to pursue their

infringement claims against Mylan separately, in another court.  Mylan argues that it is "not 'at

home' in Delaware," relying on the recent Supreme Court decision in *Daimler AG v. Bauman*,

134 S. Ct. 746 (2014).  As shown below, the application of *Daimler* here, as Mylan urges,

directly contradicts legal precedent; Mylan's motion should, therefore, be denied in all respects.

This Court has personal jurisdiction over defendant Mylan Pharma because, under

governing Delaware law, Mylan Pharma has expressly consented to general personal jurisdiction

in Delaware courts by registering to do business in Delaware and appointing an agent for service

of process in Delaware.  The Supreme Court of Delaware has held that where, as here, a

corporation has "qualified as a foreign corporation, pursuant to 8 Del. C. § 371, and appointed a

registered agent for the service of process, pursuant to 8 Del. C. § 376, [the corporation has]

consented to the exercise of jurisdiction by the Courts of Delaware."  *Sternberg v. O'Neil*, 550

1

A.2d 1105, 1116 (Del. 1988).  Moreover, in accordance with this Court's recent decision in *Bancorp Bank v. Blackburn*, C.A. No. 13-205-LPS, 2014 U.S. Dist. LEXIS 115752, at *7 (D. Del. Aug. 20, 2014) (Stark, J.), Mylan Pharma's consent satisfies due process and "renders unnecessary a traditional jurisdictional analysis."  The *Daimler* decision upon which Mylan's motion depends is, therefore, a red-herring.[1]

Furthermore, defendant Mylan Inc. consented to jurisdiction here by causing its wholly owned subsidiary Mylan Pharma to register to do business in Delaware and to appoint an agent to accept service here.  Indeed, Mylan's brief acknowledges "Mylan Inc.'s[] act of registering to transact business, licensing, or appointing an agent for service in Delaware" "by its ownership interest" in Mylan Pharma.  (Opening Br. in Supp. of Mylan's Mot. to Dismiss 11) ("Mylan Br.") (D.I. 11).

Even if this Court determines that Mylan's consent to jurisdiction alone should not conclude the jurisdictional inquiry and that it is necessary to apply the traditional standard articulated in *Daimler*, this Court's exercise of general personal jurisdiction over Mylan in Delaware is entirely proper.  As shown below, owing to its systematic and continuous contacts with Delaware, Mylan is "at home" here and subject to general jurisdiction in accordance with the Delaware long-arm statute and Constitutional due process requirements.  Mylan Pharma is registered to engage in "[p]harmaceutical manufacturing, distribution and sales" in Delaware. Mylan Pharma is also registered with the Delaware Board of Pharmacy.  As leading generic pharmaceutical companies, the Mylan defendants market their products intending that they will be prescribed, sold and used in Delaware, and they actually have been.  The Mylan defendants

---

[1]     Mylan relegates its discussion of *Sternberg* to a few sentences at pages 11-12 of its brief. Mylan's brief was filed the same day that this Court issued its decision in *Bancorp*.

also regularly litigate patent infringement cases -- a key aspect of Mylan's generic business -- in Delaware.

This Court also has specific jurisdiction over Mylan. Mylan Pharma's filing of its Abbreviated New Drug Application ("ANDA") challenging the patents protecting plaintiff Acorda's principal product, Ampyra®, was a direct attack on Acorda, which is a Delaware corporation. Furthermore, the Mylan defendants aim to induce infringement of Plaintiffs' patents in Delaware, in that they know that their generic versions of Ampyra will be used in Delaware and that such use will directly infringe the patents-in-suit.

Subjecting Mylan to personal jurisdiction in this Court is eminently fair. Given Mylan's decision to register to do business in Delaware and to appoint an agent to accept service in Delaware and in light of the Delaware Supreme Court's interpretation of the Delaware registration statute, Mylan had constructive, if not actual, notice that it could be sued here. Moreover, Mylan has routinely litigated in this Court. Because seven other infringement actions involving the same patents are pending before this Court, litigating this action in this Court will also promote judicial efficiency and avoid wasting resources. Accordingly, Mylan's motion should be denied.

## III.   FACTUAL BACKGROUND

### A.   The Instant Litigation

This lawsuit concerns Mylan's attempt to introduce a generic version of Acorda's flagship drug product, Ampyra. Ampyra is the first and only therapy specifically approved by the U.S. Food and Drug Administration ("FDA") to improve walking in people with multiple sclerosis. By letter dated July 9, 2014, Mylan Pharma notified Plaintiffs that it had filed an ANDA seeking FDA approval to market and sell generic copies of Ampyra prior to the

3

expiration of the Orange Book-listed patents which protect the product (the "Ampyra Patents").[2] (Complaint ¶¶ 34-35) (D.I. 1).  On July 16, 2014, Plaintiffs filed this lawsuit, alleging infringement of the Ampyra Patents. (Complaint).  On August 6, 2014, Plaintiffs granted Mylan a two-week extension to respond to the Complaint.  (D.I. 8).  On August 20, 2014, Mylan filed its motion to dismiss.

Pursuant to 21 U.S.C. § 355(j)(5)(B)(iii), a patent owner has 45 days from receipt of an ANDA Notice Letter to file suit against a generic challenger in order to perfect its statutory right to a stay of FDA approval of the ANDA.  In view of Mylan's motion to dismiss, on August 22, 2014, Plaintiffs filed a back-up lawsuit in the Northern District of West Virginia, where Mylan Pharma is incorporated and headquartered, *Acorda Therapeutics, Inc. v. Mylan Pharmaceuticals Inc.*, No. 1:14-cv-00139-IMK (N.D. W. Va. Aug. 22, 2014), to ensure the preservation of their statutory rights.[3]

Seven other generic companies have also filed ANDAs seeking to introduce generic versions of Ampyra.  Plaintiffs have sued each of those companies in this Court and each of those companies has agreed to personal jurisdiction here.[4]  Those cases and this case will

---

[2]     There are five Orange Book-listed patents for Ampyra: United States Patent Nos. 5,540,938; 8,007,826; 8,354,437; 8,440,703; and 8,663,685.

[3]     Due to the 45-day statutory deadline, such protective lawsuits have become common in ANDA cases.  *See, e.g., Pfizer Inc. v. Sandoz Inc.*, Civ. A. No. 09-742-JJF, 2010 WL 256548, at *3 (D. Del. Jan. 20, 2010) ("Thus, at least one court has recognized that the ambiguities in the Hatch–Waxman Act put patent holders 'between a jurisdictional rock and a hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only known safe forum . . .'.  As a result, patent holders are apparently filing 'protective' ANDA suits with increasing frequency." (citation omitted)).

[4]     *Acorda Therapeutics Inc. v. Actavis Labs. FL Inc.*, No. 1:14-cv-00882-LPS; *Acorda Therapeutics Inc. v. Aurobindo Pharma Ltd.*, No. 1:14-cv-00909-LPS; *Acorda Therapeutics Inc. v. Alkem Labs. Ltd.*, No. 1:14-cv-00917-LPS; *Acorda Therapeutics Inc. v. Roxane Labs., Inc.*, No. 1:14-cv-00922-LPS; *Acorda Therapeutics Inc. v. Accord*

present identical or very similar issues, *i.e.*, whether the Ampyra Patents are valid and will be infringed by the proposed generic products.[5]

### B. Mylan's Continuous And Systematic Contacts With Delaware

Mylan Pharma develops, licenses, manufactures, markets and distributes generic pharmaceuticals in the U.S. (Complaint ¶ 11). On April 7, 2010, Mylan Pharma registered to do business in Delaware, pursuant to 8 Del. C. § 371, representing on its State of Delaware Foreign Corporation Certificate that it is in the business of "[p]harmaceutical manufacturing, distribution and sales." (Deka Ex. A);[6] *see also* (Del. Dept. of State: Division of Corps., *Entity Details*, File No. 480919) (Deka Ex. B). Pursuant to 8 Del. C. § 376, Mylan's Certificate designates Corporation Service Company in Wilmington, DE, as Registered Agent for service of process. (Deka Ex. A). Mylan Pharma also holds licenses with the Delaware Board of Pharmacy. Pursuant to 24 Del. C. § 2450, Mylan Pharma is licensed in Delaware as a "Pharmacy-Wholesale[r]" (License No. A4-0001719) (Deka Ex. C) and a "Distributor/Manufacturer CSR" (License No. DM-0007571) (Deka Ex. D).

Over the last 19 years, Mylan Pharma has litigated in this district, as a defendant, in more than 50 civil actions; it has affirmatively invoked this Court's jurisdiction by asserting counterclaims in more than 40 of those cases. (Complaint ¶ 17; *see also* Mylan Br. 15

---

*Healthcare, Inc.*, No. 1:14-cv-00932-LPS; *Acorda Therapeutics Inc. v. Teva Pharmaceuticals USA Inc.*, No. 1:14-cv-00941-LPS; *Acorda Therapeutics Inc. v. Apotex Corp.*, No. 1:14-cv-00955-LPS.

[5]    Because Actavis Laboratories FL, Inc. ("Actavis") did not challenge U.S. Patent No. 5,540,938, plaintiff Alkermes is not a party to the case against Actavis and that patent is not asserted against Actavis.

[6]    "Deka Ex. __" refers herein to exhibits to the declaration of Acorda's counsel Soumitra Deka.

(acknowledging Mylan Pharma's "conduct in multiple prior litigations in this District")).  Mylan Pharma has also commenced six litigations in this district.[7]

Mylan Pharma is a wholly owned subsidiary of Mylan Inc. (Decl. of Robert Tighe in Supp. of Mylan's Mot. to Dismiss ¶ 4) ("Tighe Decl.") (D.I. 12).  Mylan Inc. is incorporated and headquartered in Pennsylvania (Tighe Decl. ¶ 3) and claims to be one of the largest pharmaceutical companies in the world.  (Complaint ¶ 11).  Mylan Inc. develops, licenses, manufactures, markets and distributes generic pharmaceuticals.  (*Id.*)  In February 2014, Mylan Inc. reported that it "holds the number one ranking in the U.S. generics prescription market in terms of sales and the number two ranking in terms of prescriptions dispensed."  (Mylan, Inc., Annual Report (Form 10-K) 4 (Feb. 27, 2014)) (Deka Ex. E).  Mylan Inc. has previously litigated in this district as a defendant and asserted counterclaims in at least 15 cases in this jurisdiction over the past ten years.  (Complaint ¶ 20 (D.I. 1); *see also* Mylan Br. 15 (acknowledging that Mylan Inc. "[has] previously litigated in this state")).  Mylan Inc. has also brought at least two lawsuits in this district.[8]  According to Mylan Inc.'s most recent 10-K filing, it has 20 subsidiaries that are incorporated in Delaware.  (Mylan, Inc., Annual Report (Form 10-K) Exhibit 21 (Feb. 27, 2014)) (Deka Ex. E).

---

[7]     *Mylan Pharm. Inc. v. Ethypharm SA*, No. 1:10-cv-01064-LPS (D. Del.); *Mylan Pharm. Inc. v. Galderma Labs. Inc.*, No. 1:10-cv-00892-LPS (D. Del.); *Mylan Pharm. Inc. v. Eurand Inc.*, No. 1:10-cv-00306-SLR (D. Del.); *Mylan Inc. v. Boehringer Ingelheim International GMBH*, No. 1:10-cv-00244-RK (D. Del.); *Mylan Pharm. v. Kremers Urban*, No. 1:02-cv-01628-GMS (D. Del.); *DuPont Merck v. Bristol-Myers Squibb*, No. 1:95-cv-00290-JJF (D. Del.).

[8]     *Mylan Pharm. Inc. v. Eurand Inc.*, No. 1:10-cv-00306-SLR (D. Del.); *Mylan Inc. v. Boehringer Ingelheim International GMBH*, No. 1:10-cv-00244-RK (D. Del.).

As leading manufacturers of generic drugs, the Mylan defendants have established distribution channels through which their pharmaceuticals products are sold nationwide, including in Delaware.  (Complaint ¶ 21).

## IV. MYLAN HAS CONSENTED TO GENERAL PERSONAL JURISDICTION IN THIS COURT BY REGISTERING TO DO BUSINESS AND APPOINTING AN AGENT FOR SERVICE OF PROCESS PURSUANT TO DELAWARE LAW

### A. Under Governing Delaware Law, Mylan Expressly Consented To General Jurisdiction

Federal courts recognize two bases for personal jurisdiction.  Courts may assert "specific jurisdiction" where "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"  *Daimler*, 134 S. Ct. at 754 (alteration in original) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Alternatively, courts may assert "general jurisdiction" "where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'"  *Daimler*, 134 S. Ct. at 754 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).  General jurisdiction over corporations allows courts in the forum state "to hear any and all claims against them."  *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

"It is well settled that the requirement of personal jurisdiction is intended to protect a defendant's liberty interests."  *Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 499 (D. Del. 2014).  "'Because the defense is a personal right, it may be obviated by consent or otherwise waived.'"  *Id.* (quoting *Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of

7

personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived. . . .  A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court.").  "Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional."  *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991).

State statutes and case law govern whether a corporation has consented to personal jurisdiction.  *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 573, 575 (9th Cir. 2010) ("[F]ederal courts should look first and foremost to a state's construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation."); *see also Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 175 (1939) ("'[S]tate legislation and consent of parties may bring about a state of facts which will authorize the courts of the United States to take cognizance of a case.'" (quoting *Ex parte Schollenberger*, 96 U.S. 369, 377 (1877))).

Under Delaware law, when a corporation has -- as Mylan Pharma has -- "registered to do business in Delaware and appointed an agent in Delaware to receive process, it [has] consented to the general jurisdiction of Delaware courts."  *Sternberg v. O'Neil*, 550 A.2d 1105, 1107 (Del. 1988).  In *Sternberg*, as here, the defendant foreign corporation registered to do business in Delaware pursuant to 8 Del. C. § 371 which provides that "[n]o foreign corporation shall do any business in this state" without filing in the office Secretary of State of Delaware a certificate "evidencing its corporate existence" and a statement identifying a registered agent in the state.

In *Sternberg*, the Delaware Supreme Court made clear that compliance with the Delaware statute constituted express consent to jurisdiction:

> Express consent to jurisdiction by a foreign corporation takes the form of an appointment of a statutory agent to receive service of process in compliance with the statutory requirements of the state in which the corporation desires to do business.  A corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority.  There are no limitations under 8 *Del.C.* § 376.[9]

550 A.2d at 1116 (internal citations omitted).  The *Sternberg* court explained that

> Section 376 does not in [its] terms limit the amenability of service of a qualified corporation to one which does business in Delaware or with respect to a cause of action arising in Delaware.  By the generality of its terms, a foreign corporation qualified in Delaware is subject to service of process in Delaware on any transitory cause of action.

550 A.2d at 1115 (quoting *D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1039 (D. Del. 1974).  The *Sternberg* court concluded "that when [the defendant] qualified as a foreign corporation, pursuant to 8 Del. C. § 371, and appointed a registered agent for the service of process, pursuant to 8 Del. C. § 376, [defendant] consented to the exercise of general jurisdiction by the Courts of Delaware."  550 A.2d at 1116.

*Sternberg* relied on *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), where the United States Supreme Court held that an Arizona insurance company was subject to suit in Missouri, with respect to a claim on an

---

[9]    8 Del. C. § 376(a) provides:

> All process issued out of any court of this State, all orders made by any court of this State, all rules and notices of any kind required to be served on any foreign corporation which has qualified to do business in this State may be served on the registered agent of the corporation designated in accordance with [section] 371 of this title, or, if there be no such agent, then on any officer, director or other agent of the corporation then in this State.

insurance policy issued in Colorado insuring Colorado buildings, based on the insurer having

obtained a license to do business in Missouri and having filed a required power of attorney

consenting to service upon the Missouri Superintendent of Insurance.  The Court held that the

exercise of jurisdiction based on the Missouri registration "did not deprive the defendant of due

process of law" despite the lack of other contacts with Missouri.  243 U.S. at 95.  *Sternberg* also

cited *Neirbo*, where the United States Supreme Court found "actual consent by [the defendant] to

be sued in the courts of New York, federal as well as state," based on the defendant having

designated an agent "upon whom a summons may be served within the State of New York," in

conformity with the General Corporation Law of New York.  308 U.S. at 175

   In *Continental Casualty Co. v. American Home Assurance Co.*, 61 F. Supp. 2d

128, 129-30 (D. Del. 1999), which involved a foreign insurance company that was "registered to

transact insurance with the state of Delaware pursuant to 18 Del. C. § 524," the court similarly

stated:

> Both the United States Supreme Court and the Supreme Court of
> Delaware have held that a foreign corporation which authorizes an
> agent to receive service of process in compliance with the
> requirements of a state registration statute has consented to the
> exercise of personal jurisdiction in that state, even with regard to
> causes of action that do not arise from events or transactions
> occurring within that state. . . .  As such, the Court concludes that
> the Defendants have expressly consented to the personal
> jurisdiction of courts in this District.

It is clear, therefore, that, under Delaware law, registration to do business in Delaware constitutes

consent to personal jurisdiction.

   In addition, Mylan Inc. should be deemed to have consented to jurisdiction in this

Court through its ownership of Mylan Pharma.  As mentioned, Mylan Inc. has 20 subsidiaries

that are Delaware corporations.  Moreover, in its moving brief, Mylan acknowledges "Mylan

Inc.'s[] act of registering to transact business, licensing, or appointing an agent for service in

Delaware" by Mylan Inc.'s ownership of Mylan Pharma. (Mylan Br. 11). Just as Mylan

Pharma's actions in availing itself of the privilege of doing business here constitute consent that

subjects it to personal jurisdiction in this jurisdiction, so too does Mylan Inc.'s act of causing its

wholly owned subsidiary, Mylan Pharma, to register to do business in Delaware and appoint an

agent to accept service constitute consent to jurisdiction on the part of Mylan Inc.

### B. Mylan's Express Consent Makes A Traditional "Minimum Contacts" Analysis Unnecessary

This Court recently stated that a defendant's "[c]onsent to personal jurisdiction

renders unnecessary a traditional jurisdictional analysis." *Bancorp*, 2014 U.S. Dist. LEXIS

115752, at *7. The *Sternberg* court likewise held: "If a foreign corporation has expressly

consented to the jurisdiction of a state by registration, due process is satisfied and an examination

of 'minimum contacts' to find implied consent is unnecessary." 550 A.2d at 1113; *see also Bane

v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991) ("We need not decide whether authorization to

do business in Pennsylvania is a 'continuous and systematic' contact with the Commonwealth

for purposes of the dichotomy between 'general' and 'specific' jurisdiction because such

registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts.");

*Hadley v. Shaffer*, Civ. A. No. 99-144-JJF, 2003 U.S. Dist. LEXIS 14106, at *9-10 (D. Del. Aug.

12, 2003) ("An express consent to jurisdiction, in and of itself, satisfies the requirements of Due

Process. Such consent is deemed to be a waiver of any objection on Due Process grounds and an

analysis of minimum contacts becomes unnecessary" (citations omitted)). Consequently, the

"minimum contacts" analysis conducted by the *Daimler* Court is not required here.

Registering to do business in other states also has been held to constitute consent

which is, without more, a sufficient basis for exercising personal jurisdiction. *See, e.g.*, *Bane*,

925 F.2d at 641 (3d Cir. 1991) ("We hold that because Netlink was authorized to do business in

Pennsylvania, it was subject to the exercise of personal jurisdiction by Pennsylvania courts under section 5301(a)(2)(i) or (ii).”); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990) (“We conclude that appointment of an agent for service under [Minn. Stat.] § 303.10 gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state.  Such consent is a valid basis for personal jurisdiction, and resort to minimum–contacts or due–process analysis to justify the jurisdiction is unnecessary.”); *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984) (“It is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent’s authority”; “Because we believe that Wright consented to the exercise of jurisdiction over it in New Hampshire, we need not reach Ho1loway’s contentions about the scope of the New Hampshire long-arm statute or the requirements of the United States Constitution.”); *Rockefeller Univ. v. Ligand Pharm.*, 581 F. Supp. 2d 461, 467 (S.D.N.Y. 2008) (“This Court concludes that Ligand’s unrevoked authorization to do business and its designation of a registered agent for service of process amount to consent to personal jurisdiction in New York.”).

Leading treatises also support Plaintiffs’ position.  Wright & Miller states that “[g]enerally, a company’s registration under a state appointment statute amounts to a consent to be sued in the courts of the state and a waiver of objections to the assertion of personal jurisdiction over the corporation.”  Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1116 (3d ed.); *see also* Fletcher Cyclopedia of the Law of Corporations, 18 Fletcher Cyc. Corp. § 8641 (Sept. 2014) (“However, the modern rule is that a foreign corporation that appoints an agent upon whom service of process may be made, as a condition of doing business within the state, has

thereby given effective consent to be sued not only in the state courts of that state, but in the federal courts as well.").[10]

### C. Mylan's Arguments Aimed At Avoiding The Dispositive Impact Of *Sternberg* Are Unavailing

Despite having registered to do business in Delaware and having appointed an agent to accept service of process in Delaware, Mylan insists, without substantiation, that "Mylan Pharmaceuticals did not consent to general jurisdiction in Delaware and, in turn, did not agree to be hauled into this state's courts in any lawsuit relating to any subject matter." (Mylan Br. 9). However, Mylan's self-serving *ipse dixit* is at loggerheads with the Delaware Supreme Court's interpretation of Delaware law: "[W]hen [defendant] registered to do business in Delaware and appointed an agent in Delaware to receive service of process, it consented to the general jurisdiction of Delaware courts." *Sternberg*, 550 A.2d at 1107. The *Daimler* case and *Goodyear Dunlop Tires Operations, S.A.v. Brown*, 131 S. Ct. 2846 (2011), on which Mylan also relies, concerned foreign defendants which had not registered to do business in the forum state or otherwise consented to jurisdiction there and thus those cases are not in any sense to the contrary.

The *Sternberg* court expressly rejected Mylan's reading of *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). *Sternberg* explained that "[i]t was necessary for the *Perkins* Court to conduct a minimum contacts analysis before it could find an *implied consent* to the general jurisdiction of Ohio because *the foreign corporation was not qualified* in Ohio and *had not appointed an agent* for service of process." 550 A.2d at 1111 (emphasis in original). The *Sternberg* court observed that *Perkins*, in fact, "reaffirmed the principle that there would be

---

[10]    It is telling that, by contrast, Mylan relies (at 10 n.3) on law review articles from 1989, 1990, and 1995, authored by a judicial clerk and two law students.

no need to search for minimum contacts to support an implied consent to jurisdiction, if express consent had been given."  *Id.* (citing *Perkins*, 342 U.S. at 444).

Mylan correctly points out that there is a line of cases in which courts found that registering under state law to do business in states other than Delaware was not, by itself, a sufficient basis for subjecting a corporation to general personal jurisdiction.  However, in most of those cases -- *see Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239 (7th Cir. 1990) and *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745 (4th Cir. 1971) -- the courts did not even address whether registration to do business constituted consent to jurisdiction.  In *King v. American Family Mutual Insurance Co.*, 632 F.3d 570 (9th Cir. 2010), which Mylan cites, the court relied on a Montana state court's narrow interpretation of a predecessor to the Montana registration statute.  *Sternberg*, by contrast, read the Delaware statute as having a broader jurisdictional effect.  *Sternberg,* 550 A.2d at 1116.

Mylan's reliance on *In re Mid-Atlantic Toyota Antitrust Litigation*, 525 F. Supp. 1265 (D. Md. 1981), is also misplaced.  The court addressed jurisdiction over a corporation that had registered to do business in West Virginia under a corporate registration statute that provided that "the Secretary of State is hereby constituted the attorney-in-fact for and on behalf of every . . . foreign corporation authorized to . . . transact business herein pursuant to the provisions of this article."  The *Mid-Atlantic* court distinguished the *Pennsylvania Fire. Ins.* decision, relied on by *Sternberg*, on the ground that there the United States Supreme Court had addressed a case under a Missouri statute that "clearly required some contact with the state, providing that a foreign insurance company must file with the superintendent of the insurance department 'a power of attorney consenting that service of process upon the superintendent be deemed personal service upon the company so long as it should have any liabilities outstanding

14

in the state.'" 525 F. Supp. at 1277. The Delaware statute, which requires that the registrant appoint an agent to accept service, is thus consistent with the Missouri law at issue in *Pennsylvania Fire Ins.*, but unlike the West Virginia law at issue in *Mid-Atlantic* under which the Secretary of State is automatically deemed an agent to accept service without any further action by the registrant.

To the extent that the *Mid-Atlantic* case and *WorldCare Ltd. v. World Insurance Co.*, 767 F. Supp. 2d 341, 354-55 (D. Conn. 2011), which Mylan also cites, take the position that consent to jurisdiction by corporate registration does not justify personal jurisdiction absent constitutionally sufficient contacts, those cases are at odds with this Court's decision in *Bancorp* and with the Delaware Supreme Court's decision in *Sternberg*.[11]

### D. This Court's Exercise Of Jurisdiction Over Mylan Is Entirely Fair

Requiring Mylan to litigate this case in this Court to promote judicial economy and preserve resources is manifestly fair. Given the Delaware Supreme Court's long-standing interpretation of the Delaware registration statute in *Sternberg*, Mylan was on notice that it would be subject to suit in Delaware regardless of its other contacts with Delaware or lack thereof. *See Rockefeller Univ.*, 581 F. Supp. 2d at 466 ("In maintaining an active authorization to do business and not taking steps to surrender it as it has a right to do, defendant was on constructive notice that New York deems an authorization to do business as consent to jurisdiction."). If Mylan wanted to avoid being sued in Delaware it could simply have withdrawn its Delaware registration. *See* 8 Del. C. § 381.[12]

---

[11]   The *Sternberg* court itself acknowledged that some courts take a different view "as to whether statutory registration can operate as an express consent to personal jurisdiction in the absence of 'minimum contacts.'" 550 A.2d at 1110.

[12]   In *Rockefeller Univ.*, the court quoted a civil practice commentator as having observed that "foreign corporations 'have no one to blame but themselves if they do not actually do

Furthermore, as discussed above, Mylan regularly litigates in Delaware.  Mylan Pharma has litigated as a defendant in over 50 cases in this court and has initiated at least six cases in this court.  Mylan Inc. has been a party in at least 15 litigations in this district and has brought at least two cases in this district.

## V.    THIS COURT HAS GENERAL PERSONAL JURISDICTION OVER MYLAN UNDER *DAIMLER*

Although this Court should deny Mylan's motion to dismiss based purely on Mylan's consent to personal jurisdiction in Delaware, the Court, in any event, has general jurisdiction over Mylan which is "at home" in Delaware, in accordance with *Daimler*.

As this Court recently explained:

> Determining the existence of personal jurisdiction requires a two part analysis.  First, the court analyzes the long-arm statute of the state in which the court is located.  Next, the court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution.  Due Process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that maintenance of the suit does not offend traditional motions of fair play and substantial justice."

*Bancorp*, 2014 U.S. Dist. LEXIS 11572, at *3-4 (citations omitted).

"[P]ersonal jurisdiction over a defendant is only proper if it meets the requirements of Delaware's long-arm statute and, separately, comports with due process." *Capriotti's*, 857 F. Supp. 2d at 498.

The Delaware long-arm statute states, in relevant part:

---

business in New York or fail to surrender their license when they stop doing business here.  The continuing existence of the privilege to do business in New York, regardless of whether it is exercised, rightfully yields jurisdictional consequences if the consent to service on the Secretary of State goes unrevoked.'" *Rockefeller Univ.*, 581 F. Supp. 2d at 467 (quoting V. Alexander, Practice Commentaries, McKinney's CPLR § 301 at C301:6 (West 2001)).

16

> a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
>           *                 *              *
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State

10 Del. C. § 3104(c).

The Mylan defendants' continuous and systematic contacts with Delaware qualify them for general jurisdiction in Delaware under 10 Del. C. § 3104(c)(4) and render them "at home" in Delaware under *Daimler*.  As discussed above, Mylan Pharma, a wholly owned subsidiary of defendant Mylan Inc., registered in Delaware to conduct "[p]harmaceutical manufacturing, distribution and sales," appointed an agent for service of process in Delaware, and became licensed by the Delaware Board of Pharmacy as both a "Pharmacy-Wholesale[r]" and "Distributor/Manufacturer CSR."  *See supra* III.B.  Mylan Inc. has 20 subsidiaries that are incorporated in Delaware. (Mylan, Inc., Annual Report (Form 10-K) Exhibit 21 (Feb. 27, 2014)).  The Mylan defendants purport to be leaders in the field of manufacturing and marketing generic pharmaceuticals.  *See supra* III.B.  The Mylan defendants undeniably have established distribution channels which ensure that Mylan products are sold and used nationwide, including in Delaware.  The Mylan defendants derive substantial revenues from those sales.

The fact that Mylan uses "middlemen" in marketing its products does not negate Mylan's significant contacts with Delaware. *See Eli Lilly & Co. v. Sicor Pharm., Inc.*, 1:06-CV-238-SEB-JMS, 2007 U.S. Dist. LEXIS 31657, at *21 (S.D. Ind. Apr. 27, 2007) ("It is clear to us that Sicor Pharma does have continuous and systematic contacts with Indiana which permit an

exercise of general personal jurisdiction over it here. The fact that Sicor Pharma sells products in Indiana through out-of-state, independent wholesalers, rather than through 'direct' sales to Indiana customers, does not change our conclusion. The presence of a GPO 'middleman' does not insulate Sicor Pharma from its having purposefully availed itself of the forum state by generating [redacted in opinion] worth of commercial activity in Indiana through its sales efforts.").

Finally, Mylan is very much "at home" in this Court in particular. Patent litigation is at the core of Mylan's business model. As mentioned, the Mylan defendants, collectively, have defended more than 50 lawsuits in this Court, asserted counterclaims in over 40 of those cases, and filed at least six lawsuits here. *See supra* III.B.

The *Daimler* case, where the Supreme Court found no jurisdiction, involved an extreme set of circumstances that bear no resemblance to this case. In *Daimler*, the defendant, Daimler AG, contended that it was a German company, headquartered in Stuttgart, Germany, which was "not qualified or authorized to do business in California" and did not "import, manufacture, sell, service, or warranty" cars in California. *Bauman v. DaimlerChrysler AG*, No. C-04-00194, 2005 U.S. Dist. LEXIS 31929, at *4-5 (N.D. Cal. Nov. 22, 2005).[13]

Moreover, the *Daimler* case was brought in California by Argentinian plaintiffs who claimed that an Argentinian subsidiary of Daimler AG, which was not a party to the case, had collaborated with Argentinian security forces "to kidnap, detain, torture and kill certain [of the subsidiary's] workers." 134 S. Ct. at 751. Thus, in *Daimler*, neither the plaintiffs nor the claims had any connection at all with the forum. Applying *Daimler* broadly to preclude

---

[13]  The *Goodyear* case is consistent with *Daimler* in that the foreign defendants were not present or registered to do business in the forum state and, therefore, were "in no sense at home" there. *Goodyear*, 131 S. Ct. at 2848, 2857.

jurisdiction over Mylan here, as Mylan urges, would dramatically change the way in which pharmaceutical patent infringement cases are typically litigated.

　　　　　If this Court has any doubt as to Mylan being subject to general jurisdiction in Delaware, the Court should afford Plaintiffs an opportunity to engage in jurisdictional discovery to establish the full scope of Mylan's contacts with the state.  The facts already of record indicate that discovery will confirm that Mylan's contacts with Delaware satisfy the Constitutional "minimum contacts" requirements.  The Tighe declaration submitted by Mylan in support of its motion raises more questions about jurisdiction than it answers.[14]  Consequently, jurisdictional discovery is warranted.  *See E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. A. No. 11-773-SLR-CJB, 2012 U.S. Dist. LEXIS 140037, at *42-43 n.11 (D. Del. Sept. 28, 2012); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 377 (D. Del. 2008).

## VI.　　THIS COURT HAS SPECIFIC JURISDICTION OVER MYLAN

　　　　　Even if this Court does not have general jurisdiction over Mylan by virtue of its consent to jurisdiction or its continuous and systematic contacts with the state, the Court has specific jurisdiction over Mylan.

　　　　　"The Federal Circuit applies a three prong test to determine if specific jurisdiction exists:  (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair."  *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).  The plaintiff must establish the first two factors, while the

---

[14]　　The Tighe declaration sheds no light on, *inter alia*, the extent to which Mylan products are sold in Delaware, the facts surrounding Mylan Pharma's decision to register to do business in Delaware and to become licensed by the Board of Pharmacy, Mylan's awareness of the *Sternberg* decision when it registered to do business in Delaware, and the particulars of the relationship between Mylan Pharma and Mylan Inc.

defendant can attempt to show jurisdiction would be unreasonable under the third factor.  *Id.*
"The Supreme Court advises that the third factor applies only sparingly," and "'defeats of
otherwise constitutional personal jurisdiction "are limited to the rare situation in which the
plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so
attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation
within the forum."'"  *Id.* (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)).

   With respect to the Delaware long-arm statute, the Mylan defendants clearly
satisfy Sections 3104(c)(1) and (4), having engaged in a continuous and persistent course of
business with the state and having derived substantial revenue from Delaware.  Furthermore,
personal jurisdiction over the Mylan defendants in Delaware would not violate due process
because the claims here relate to their contacts with the state.  First, in filing its ANDA
challenging the patents protecting Ampyra, Mylan Pharma "purposefully directed" its activities
at plaintiff Acorda, which is a Delaware corporation; Mylan's filing of its ANDA constitutes a
statutory act of patent infringement directed at a Delaware resident.  35 U.S.C. § 271(e)(2).  In
addition, Plaintiffs' claims in this case relate to Mylan's activities in Delaware in that Mylan is
seeking to market generic versions of Ampyra in Delaware (as well as throughout the United
States) prior to the expiration of the Ampyra patents.  Mylan intends that its product will be
prescribed, sold and used in Delaware and, therefore, Mylan aims to induce infringement of the
patents-in-suit in Delaware.

   Finally, when evaluating "whether assertion of personal jurisdiction is 'reasonable
and fair,'" the relevant factors a Court should consider include "the burden on the defendant, the
forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient
and effective relief, the interstate judicial system's interest in obtaining the most efficient

20

resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotes omitted).  Here, the relevant factors heavily favor jurisdiction.  The burden on Mylan to litigate in Delaware as opposed to West Virginia or Pennsylvania is *de minimus*.  Mylan is a large company that does business worldwide and has extensive experience litigating in Delaware.  Moreover, Delaware has a strong interest in adjudicating this dispute in order to protect the interests of Acorda, a Delaware corporation.  By exercising jurisdiction over Mylan, this Court will be able to coordinate all eight of the related Ampyra litigations, promoting efficiency and consistency.

Mylan's arguments regarding the "effects test" are beside the point.  (D.I. 11 at 13-15).  As recently clarified by the Supreme Court, the "effects test" essentially collapses into specific jurisdiction inquiry laid out above.  *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."  *Id.* at 1121 (citations omitted).  Here, as discussed above, the conduct of the Mylan defendants directly connects both of them to Delaware and, accordingly, this Court may properly exercise specific jurisdiction over both Mylan Pharma and Mylan Inc.[15]

---

[15]     Defendant's discussion of *Glaxo Inc. v. Genpharm Pharm., Inc.*, 796 F. Supp. 872, 876 (E.D.N.C. 1992), is inapposite.  (D.I. 11 at 14-15).  If anything, *Glaxo* underscores that jurisdiction in this state is proper. Unlike here, in *Glaxo*, the "plaintiff point[ed] to only a single contact by [defendant] with North Carolina as a basis for jurisdiction, namely, [defendant's] mailing of the notice of certification of invalidity of the '431 patent to [plaintiff], in North Carolina on March 19, 1991." *Id.* The defendant in *Glaxo* had no other contacts with North Carolina.  Here, however, (1) Mylan has a registered agent in Delaware to accept process; (2) Mylan is licensed to do business in Delaware; and (3) Mylan's products are sold and used in Delaware.  These factors require a different result than in *Glaxo*.

## VII.     <u>CONCLUSION</u>

Based on the foregoing, Mylan's motion should be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

OF COUNSEL:

Aaron Stiefel
Daniel P. DiNapoli
Benjamin C. Hsing
Soumitra Deka
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000


Sylvia M. Becker
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
(202) 683-3500

Anthony Michael
ACORDA THERAPEUTICS, INC.
420 Saw Mill River Road
Ardsley, NY 10502
(914) 326-6825

September 8, 2014

_____
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Acorda Therapeutics, Inc. and*
*Alkermes Pharma Ireland Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 8, 2014, upon the following in the manner indicated:

Mary B. Matterer, Esquire                                        *VIA ELECTRONIC MAIL*
Richard K. Herrmann, Esquire
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
*Attorneys for Mylan Pharmaceuticals Inc. and*
*Mylan Inc.*

/s/ *Maryellen Noreika*
_____
Maryellen Noreika (#3208)