# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ACORDA THERAPEUTICS, INC. and ALKERMES PHARMA IRELAND LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 14-935-LPS |
| MYLAN PHARMACEUTICALS INC. and MYLAN INC. | ) ) ) | |
| Defendants. | ) | |

Jack B. Blumenfeld and Maryellen Noreika, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, DE.

Aaron Stiefel, Daniel P. DiNapoli, Benjamin C. Hsing, and Soumitra Deka, KAYE SCHOLER, LLP, New York, NY.

Sylvia M. Becker, KAYE SCHOLER, LLP, Washington, DC.

Anthony Michael, ACORDA THERAPEUTICS, INC., Ardsley, NY.

    Attorneys for Plaintiffs

Mary B. Matterer and Richard K. Herrmann, MORRIS JAMES, LLP, Wilmington, DE.

Timothy H. Kratz, George J. Barry III, Karen L. Carroll, and Brie L.B. Buchanan, MCGUIREWOODS, LLP, Atlanta, GA.

Cedric C.Y. Tan, MCGUIREWOODS, LLP, Washington, DC.

    Attorneys for Defendants

## OPINION

January 14, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

Defendants Mylan Pharmaceuticals Inc. ("Mylan Pharma") and Mylan Inc. ("Mylan Inc." and, together with Mylan Pharmaceuticals, "Mylan" or "Defendants") have moved to dismiss the complaint filed against them by Plaintiffs Acorda Therapeutics, Inc. ("Acorda") and Alkermes Pharma Ireland Limited ("Alkermes" and, together with Acorda, "Plaintiffs"). (D.I. 10) Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting a lack of personal jurisdiction. Specifically, Mylan contends that the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), has resulted in the District of Delaware lacking general jurisdiction over Mylan in this (and likely all)[1] Abbreviated New Drug Application ("ANDA") lawsuits. Mylan further contends that its relationship with Delaware and with this litigation does not support the exercise of specific jurisdiction.

After reviewing thorough briefing and hearing oral argument, the Court has concluded that it does have personal jurisdiction over Mylan Pharma in this action. While *Daimler* altered the analysis with respect to general jurisdiction – and the Court agrees with Mylan that this Court cannot exercise general personal jurisdiction over either of the Mylan Defendants on the basis that they are "at home" in Delaware – *Daimler* does not change the fact that Mylan Pharma consented to this Court's exercise of personal jurisdiction when it registered to do business and appointed an agent for service of process in the State of Delaware. In addition, Plaintiffs have met their burden to establish that this Court has personal jurisdiction over Mylan Pharma based

---

[1] At oral argument on the motion to dismiss, Mylan's attorney stated, "The *Daimler* court changed the game. Because of that, we don't expect to be sued here any more." (*See* Transcript of Dec. 15, 2014 Hearing (D.I. 29) ("Tr.") at 9)

1

on specific jurisdiction, which provides an independent reason for denying the motion as it relates to Mylan Pharma.

With respect to Mylan Inc., which is the parent of Mylan Pharma, the Court lacks general jurisdiction, as Mylan Inc. is neither "at home" nor registered to do business in Delaware. However, Plaintiffs allege but have not proven a non-frivolous claim that Mylan Inc. used Mylan Pharma as its agent in connection with the ANDA filing giving rise to this litigation. Therefore, the Court will permit Plaintiffs to take jurisdictional discovery of Mylan Inc.'s relationship with Mylan Pharma and with the ANDA filing at issue in this case.

## BACKGROUND

### I. Plaintiffs: Acorda and Alkermes

Plaintiff Acorda is a corporation organized under the laws of the State of Delaware, having a principal place of business in Ardsley, New York. (D.I. 1 at ¶ 3) Acorda researches, develops, and sells biotech and pharmaceutical products, including therapies to restore neurological functioning in people with multiple sclerosis ("MS"). (*Id.*) Plaintiff Alkermes is a corporation organized under the laws of Ireland, having a principal place of business in Dublin, Ireland. (*Id.* at ¶ 4)

Acorda's "flagship drug product" is Ampyra®, which has been shown to improve walking in people with MS. (*Id.* at ¶¶ 2, 30) Acorda holds New Drug Application ("NDA") No. 022250, approved by the U.S. Food and Drug Administration ("FDA"), for the use of 10 mg dalfampridine extended release tablets. (*Id.* at ¶ 30) It is this product which Acorda sells under the registered name Ampyra®. (*Id.*)

2

There are five patents-in-suit: U.S. Patent Nos. 5,540,938 (the "'938 patent"), 8,007,826 (the "'826 patent"), 8,354,437 (the "'437 patent"), 8,440,703 (the "'703 patent"), and 8,663,685 (the "'685 patent") (collectively, "the Ampyra® patents"). All of the Ampyra® patents are listed in the FDA's "Orange Book"[2] and have expiration dates of between 2018 and 2027. (*Id.* at ¶¶ 32-33) Acorda is the exclusive U.S. licensee of the '938 patent – which is assigned to co-Plaintiff Alkermes – and has all right, title, and interest in the other four Ampyra® patents. (*Id.* at ¶¶ 5-6, 25)

## II. Defendants: Mylan Pharma and Mylan Inc.

Mylan Pharma is a corporation organized under the laws of the State of West Virginia, having a principal place of business in Morgantown, West Virginia. (*Id.* at ¶ 7; D.I. 12 at 2) It "formulat[es], develop[s], manufactur[es], packag[es], market[s], and sell[s] generic copies of branded pharmaceutical products for the United States market, including in Delaware." (D.I. 1 at ¶ 8)

On April 7, 2010, pursuant to sections 371 and 376 of title 8 of the Delaware Code, Mylan Pharma qualified to do business in Delaware, by filing with the Secretary of State (1) a certificate of incorporation, representing its business as "[p]harmaceutical manufacturing, distribution and sales," and (2) and a statement naming Corporation Services Company, in Wilmington, Delaware, as its registered agent to accept service of process in the State of

---

[2]As the Supreme Court has explained, "To facilitate the approval of generic drugs as soon as patents allow, the Hatch-Waxman Amendments and FDA regulations direct brand manufacturers to file information about their patents. . . . [T]he FDA . . . [then] publishes the . . . patent numbers and expiration dates, in a fat, brightly hued volume called the Orange Book (less colorfully but more officially denominated Approved Drug Products with Therapeutic Equivalence Evaluations)." *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 132 S. Ct. 1670, 1676 (2012) (internal citations omitted).

Delaware. (D.I. 1 at ¶ 7; D.I. 15 at 5; D.I. 16, Exs. A & B)  Mylan Pharma is also registered with the Delaware Board of Pharmacy as a licensed "Pharmacy-Wholesale" and a "Distributor/Manufacturer CSR." (D.I. 1 at ¶ 9; D.I. 16, Exs. C & D)  Additionally, Mylan Pharma has "litigat[ed], as a defendant, over 50 other civil actions initiated in this jurisdiction in the last 19 years and affirmatively invoked this Court's jurisdiction by asserting counterclaims in at least 46 of those cases." (D.I. 1 at ¶ 17)

Mylan Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania, having a principal place of business in Canonsburg, Pennsylvania. (*Id.* at ¶ 10)  Mylan Inc. is "a pharmaceutical company which develops, licenses, manufacturers, markets and distributes generic pharmaceuticals in the U.S." (*Id.* at ¶ 11)  In fact, Mylan Inc. reports that "it is one of the largest generic pharmaceutical companies in the world today in terms of revenue as a result of, *inter alia*, its 'ability to efficiently obtain [ANDA] approvals." (*Id.* at ¶ 19; D.I. 16, Ex. E at 5)  More particularly, Mylan Inc. "holds the number one ranking in the U.S. generics prescription market in terms of sales and the number two ranking in terms of prescriptions dispensed." (D.I. 1 at ¶ 19)

Although 20 Mylan Inc. subsidiaries have incorporated in Delaware (*see* D.I. 16, Ex. E at 37-40), Mylan Inc. is not registered to do business in Delaware (*see* Tr. at 43).  Mylan Inc. has "litigat[ed] as a defendant and assert[ed] counterclaims in at least 15 cases initiated in this jurisdiction over the past ten years." (D.I. 1 at ¶ 20)

Neither of the Defendants has any manufacturing plants, offices, facilities, other real property, a telephone listing, or a mailing address in the State of Delaware. (D.I. 12 at ¶ 5)  In 2013, Mylan Pharma had no sales in Delaware, and that same year Mylan Inc.'s sales in

4

Delaware produced just $429 in revenue. (*Id.* at ¶ 5)  These figures do not include any revenue the Mylan Defendants derive from distribution of generic drug products in Delaware through out-of-state distributors. (*See* Tr. at 57)

Mylan Pharma is a wholly-owned subsidiary of Mylan Inc. (*Id.* at ¶ 7)  Plaintiffs allege that Mylan Pharma and Mylan Inc. "are agents of each other and/or work in concert with each other with respect to the development, regulatory approval, marketing, sale, and distribution of pharmaceutical products throughout the United States, including into Delaware." (*Id.* at ¶ 21)  It is undisputed, however, that Defendants are separate corporate entities. (D.I. 17 at 8)

### III.    Mylan's ANDA Filing and ANDA Notice Letter

On January 22, 2014, Mylan Pharma filed ANDA No. 20-6858 ("Mylan's ANDA Filing")[3] seeking FDA approval to market generic 10 mg doses of dalfampridine extended-release tablets ("Mylan's Generic Product") in the United States before the expiration of the Ampyra® patents. (D.I. 12 at ¶ 7; *see also* D.I. 1 at ¶ 36)  Mylan's ANDA Filing included a "paragraph IV certification," pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), contending that the Ampyra® patents are "invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use or sale" of Mylan's Generic Product. (D.I. 1 at ¶ 35)  Mylan Pharma prepared Mylan's ANDA Filing in West Virginia and filed it with the FDA in Maryland. (D.I. 12 at 2-3)  Plaintiffs allege that "Defendants collaborated and acted in concert in the decision to file and the filing of ANDA No. . . . 20-6858 identified in the Mylan Notice Letter." (D.I. 1 at

---

[3]Mylan's notice letter to Plaintiffs mistakenly identified Mylan's ANDA Filing as having been given No. 20-6268. (*See* D.I. 1 at ¶ 34; D.I. 12 at 2 n.2)

¶ 37) If Mylan's Generic Product is approved by the FDA, it will be marketed and distributed, prescribed by physicians, and dispensed by pharmacies, throughout the United States, including in Delaware. (*Id.* at ¶¶ 22-23)

On July 9, 2014, Mylan Pharma gave Plaintiffs notice of Mylan's ANDA Filing (the "Mylan Notice Letter"). (*Id.* at ¶ 34) Specifically, Mylan Pharma mailed the Mylan Notice Letter to Acorda at its principal place of business in New York and also to Alkermes at its principal place of business in Ireland. (*See* Tr. at 24, 50)

## IV. Plaintiffs' ANDA Suits

On July 16, 2014, Plaintiffs commenced this action, alleging that Defendants directly and indirectly infringed claims of all of the Ampyra® patents by submitting or causing submission of the Mylan ANDA Filing. (D.I. 1 at 9-16) Because Plaintiffs filed suit within 45 days of receiving the Mylan Notice Letter, the FDA is automatically stayed from giving final approval to Mylan's Generic Product for 30 months. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

In their complaint, Plaintiffs assert five counts of infringement – one for each of the Ampyra® patents – against both Defendants, as well as a sixth count alleging that Mylan Inc. induced infringement by its role in bringing about Mylan's ANDA Filing. (D.I. 1 at ¶¶ 39-86)

Numerous other generic pharmaceutical companies besides Mylan have filed ANDAs seeking FDA approval to market generic versions of Ampyra®. Consequently, Plaintiffs filed seven other related ANDA suits in the District of Delaware in July 2014, all of which are assigned to the same undersigned Judge.[4] Notably, the first of the Ampyra® patent ANDA suits

---

[4]*See Acorda Therapeutics Inc. v. Actavis Labs. FL Inc.*, C.A. No. 14-882-LPS (filed July 7, 2014); *Acorda Therapeutics Inc. v. Aurobindo Pharma Ltd.*, C.A. No. 14-909-LPS (filed July 10, 2014); *Acorda Therapeutics Inc. v. Alkem Labs. Ltd.*, C.A. No. 14-917-LPS (filed July 11,

6

was filed in this Court two days before Mylan Pharma sent Plaintiffs the Mylan Notice Letter.
*See Acorda Therapeutics Inc. v. Actavis Labs. FL Inc.*, C.A. No. 14-882-LPS (filed July 7, 2014),
D.I. 1.

## V.     Mylan's Motion to Dismiss

On August 20, 2014, Defendants filed their motion to dismiss the complaint, pursuant to

Federal Rule of Civil Procedure 12(b)(2), contending that this Court lacks personal jurisdiction

over both of them. (D.I. 10) Briefing on the motion was completed on September 26, 2014 (D.I.

21), although the parties thereafter submitted letter briefs addressing the subsequent decision by

the Honorable Gregory M. Sleet in *AstraZeneca v. Mylan*, 2014 WL 5778016 (D. Del. Nov. 5,

2014) (hereinafter "*AstraZeneca*"). The Court heard oral argument on December 15, 2014.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a case

based on the court's lack of personal jurisdiction over that party. When a defendant moves to

dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the

basis for jurisdiction. *See Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365,

369 (D. Del. 2008). If no evidentiary hearing has been held, a plaintiff "need only establish a

*prima facie* case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312,

316 (3d Cir. 2007). A plaintiff "presents a *prima facie* case for the exercise of personal

---

2014); *Acorda Therapeutics Inc. v. Roxane Labs. Inc.*, C.A. No. 14-922-LPS (filed July 14,
2014); *Acorda Therapeutics Inc. v. Accord Healthcare Inc.*, C.A. No. 14-932-LPS (filed July 15,
2014); *Acorda Therapeutics Inc. v. Teva Pharm. USA Inc.*, C.A. No. 14-941-LPS (filed July 17,
2014); *Acorda Therapeutics Inc. et al. v. Apotex Corp.*, C.A. No. 14-955-LPS (filed July 18,
2014). Other than the first of these suits, C.A. No. 14-882, in which only Acorda is a plaintiff
and the '938 patent is not asserted, all of these suits were brought by both Acorda and Alkermes
and assert infringement of all five of the Ampyra® patents.

jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion to dismiss for lack of personal jurisdiction, "the Plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

Determining the existence of personal jurisdiction generally requires a two-part analysis – one statutory and one constitutional.[5] With respect to the statutory analysis, typically the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether exercising jurisdiction over the moving defendant in this state comports with the Due Process Clause of the U.S. Constitution. *See id.* Due process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). As explained below, due process may also be satisfied by consent of the party asserting a lack of personal jurisdiction.

---

[5]With regard to the statutory inquiry, the court applies the law of the state in which the district court is located; as to the constitutional inquiry, in a patent case such as this one the court applies the law of the Federal Circuit. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

8

## DISCUSSION

In opposing Defendants' motion, Plaintiffs assert three bases for this Court's exercise of personal jurisdiction over both Mylan Defendants: (1) general jurisdiction, notwithstanding *Daimler*; (2) general jurisdiction based on consent; and (3) specific jurisdiction. In the Discussion below, the Court first describes the *Daimler* decision, and then turns to each of Plaintiffs' grounds for finding personal jurisdiction.

### I.     The Supreme Court's Decision in *Daimler*

*Daimler* involved a dispute over whether the United States District Court for the Northern District of California could exercise general jurisdiction over a German manufacturer of luxury vehicles, DaimlerChrysler Aktiengesellscaft ("Daimler"). The plaintiffs in *Daimler* were 22 Argentinian residents, who alleged that a subsidiary of Daimler, Mercedes-Benz Argentina, violated the Alien Tort Statute, 28 U.S.C. § 1350, and the Torture Victim Protection Act of 1991, 106 Stat. 73, note following 28 U.S.C. § 1350, by collaborating with Argentinian security forces to commit human rights violations during Argentina's "Dirty War." *Daimler*, 134 S. Ct. at 750-51. Daimler's subsidiary allegedly committed the violations in Argentina between 1976 and 1983; the plaintiffs filed suit against Daimler in California in 2004. *See id.* at 751. The plaintiffs asserted that the California court could exercise general jurisdiction; that is, they contended that California "is a place where Daimler may be sued on any and all claims against it, wherever in the world the claims may arise." *Id.*

As the basis for the California court to exercise jurisdiction over Daimler, plaintiffs alleged that an agency relationship existed between Daimler and another of its subsidiaries, Mercedes-Benz USA, LLC ("MBUSA"). *See id.* at 752. MBUSA, which was an "indirect"

9

subsidiary of Daimler wholly-owned by another Daimler subsidiary, served as Daimler's

exclusive importer and distributor in the United States. *See id.* at 752 & n.3. MBUSA was

incorporated in Delaware and had its principal place of business in New Jersey. *See id.* at 751-

52. MBUSA's U.S. distribution included California, where MBUSA had several corporate

facilities. *See id.* at 751-52, 758. MBUSA's annual sales of Daimler vehicles in California

generated approximately $4.6 billion in revenues, accounting for 2.4% of Daimler's global sales.

*See id.* at 766-67 (Sotomayor, J., concurring).

Daimler's own contacts with California were sporadic, but the plaintiffs argued that

MBUSA's contacts with California could be attributed to Daimler for jurisdictional purposes.

*See id.* at 751-52. The district court disagreed, finding that MBUSA was not Daimler's agent,

and, further, that Daimler's own contacts with California were insufficient to support a finding of

general jurisdiction in California over Daimler. *See id.* at 752. The district court dismissed the

case.

On appeal, the Court of Appeals for the Ninth Circuit initially affirmed the dismissal. *See*

*id.* at 753. Later, however, the appellate court granted the plaintiffs' petition for rehearing and

reversed the district court, finding general jurisdiction based on an agency relationship between

Daimler and MBUSA. *See id.* at 753. Thereafter, the Supreme Court "granted certiorari to

decide whether, consistent with the Due Process Clause of the Fourteenth Amendment, Daimler

is amenable to suit in California courts for claims involving only foreign plaintiffs and conduct

occurring entirely abroad." *Id.* at 753.

10

In a unanimous holding,[6] the Supreme Court reversed the Ninth Circuit, agreeing instead with the district court's dismissal. In doing so, the Supreme Court first rejected the Ninth Circuit's view that a subsidiary could be considered an agent for jurisdictional purposes if the subsidiary's services to the parent were important enough that the parent stood ready to perform the services itself. *See id.* at 758-59. The Court then proceeded to explain that, even assuming that MBUSA's contacts with California could be attributed to Daimler, Daimler itself still could not be subjected to the general jurisdiction of California courts. *See id.* at 760.

In reaching its conclusion, the *Daimler* Court emphasized that although "continuous and systematic contacts" are sufficient to support an exercise of specific jurisdiction when those contacts give rise to the cause of action, an exercise of general jurisdiction requires much more. *See id.* at 761. To assess whether general jurisdiction was available, the Supreme Court undertook an analysis of whether Daimler was "essentially at home" in California, a concept the Court had described in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). "[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum state.'" *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851).

*Daimler* went on to explain that in all but the most exceptional circumstances, a corporation is "at home" only in the two "paradig[m] . . . bases for general jurisdiction": its place of incorporation and its principal place of business. *Id.* at 760-61 & n.19. These "affiliations

---

[6]Justice Sotomayor wrote a concurring opinion. *See* 134 S. Ct. at 763-73 (Sotomayor, J., concurring).

have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable." *Id.* at 760. Accordingly, limiting general jurisdiction to only those forums in which a corporation is "at home" allows corporations "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," while "afford[ing] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 760-62. By contrast, "exorbitant" theories of general jurisdiction, which would render a corporation potentially liable to suit for all claims in many if not all states, lead to unpredictability for the corporation and are thus "unacceptably grasping." *Id.* at 761-62.

The factual and legal contexts in which *Daimler* arose could hardly be more different than those in which the instant case arises. Most fundamentally, in the 1970s and 1980s, when Daimler's subsidiary was allegedly engaged in the activities ultimately giving rise to the 2004 lawsuit against Daimler, Daimler ***could not have foreseen*** that, more than ***two decades later***, it would be sued for ***human rights violations*** that had occurred in Argentina, and that the suit would be brought in ***California***. *See, e.g.*, 134 S. Ct. at 761-62 (describing *Daimler* as "Argentina-rooted case," involving "claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in California").[7] Here, by contrast, when Mylan Pharma sent the Mylan Notice Letter to Plaintiffs on July 9, 2014, it knew to a ***near certainty*** that, ***within 45 days***, it would be sued for ***patent infringement***, and that the suit would

---

[7]The *Daimler* majority opinion concludes by emphasizing "the risks to international comity" that the Ninth Circuit's "expansive view of general jurisdiction posed." 134 S. Ct. at 762-63. No one contends that any similar risk is posed in the ANDA context now before this Court.

be brought in *the District of Delaware*. (*See* Tr. at 9-11) This last, crucial, piece of knowledge

was due to the facts that Plaintiff Acorda is a Delaware corporation, which is "at home" in

Delaware; and at the time Mylan sent Plaintiffs the Mylan Notice Letter, Acorda had already

filed related Ampyra® ANDA litigation in the District of Delaware.

## II.    Mylan Is Not "At Home" in Delaware

The first basis on which Plaintiffs oppose Mylan's motion is that, according to Plaintiffs,

this Court may exercise general jurisdiction over both Mylan Defendants based on Defendants'

continuous and systematic contacts with Delaware. Plaintiffs maintain that general jurisdiction is

present here in Delaware notwithstanding the Supreme Court's decision in *Daimler*. The Court

disagrees.

As an initial matter, the Court agrees with both sides that the general jurisdiction analysis

required in this case involves consideration solely of the due process issue, as Defendants have

not challenged Plaintiffs' contention that Delaware's long-arm statute is satisfied. (*See* Tr. at 4)

In order for this Court to have general jurisdiction over Mylan based on minimum

contacts, the Court must find that Mylan's "affiliations with the State are so 'continuous and

systematic' as to render them essentially at home in the forum State." *Daimler*, 134 S. Ct. at 754

(quoting *Goodyear*, 131 S. Ct. at 2846). *Daimler* explains:

> General jurisdiction . . . calls for an appraisal of a corporation's
> activities in their entirety, nationwide and worldwide. A
> corporation that operates in many places can scarcely be deemed at
> home in all of them. Otherwise, "at home" would be synonymous
> with "doing business" tests framed before specific jurisdiction
> evolved in the United States." Nothing in *International Shoe* and
> its progeny suggests that "a particular quantum of local activity"
> should give a state authority over a "far larger quantum of . . .
> activity" having no connection to any in-state activity.

*Id.* at 762 n.20.

Here, neither of the two paradigmatic scenarios in which a corporation is "at home" are present, as neither Mylan Pharma nor Mylan Inc. are Delaware corporations or have their principal place of business in Delaware. The Supreme Court has not "foreclose[d] the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19. But Plaintiffs do not articulate any persuasive basis for finding either Mylan Pharma or Mylan Inc. to have *operations* in Delaware of such a type and extent as to render either corporation "at home" in Delaware. While both Mylan entities have litigated frequently in the District of Delaware, Mylan Pharma is registered to do business in Delaware, and numerous Mylan Inc. subsidiaries are incorporated in Delaware, these contacts are inadequate for purposes of general jurisdiction. In short, this is not an "exceptional case" in which Mylan should be deemed to be "at home" in Delaware.

For these reasons, this Court cannot exercise general personal jurisdiction over either of the Mylan Defendants on the basis that these corporations are "at home" in Delaware.[8]

---

[8]Judge Sleet reached the same conclusion in *AstraZeneca*, 2014 WL 5778016, at *3 ("The court finds that AstraZeneca has failed to allege contacts sufficient to render Mylan at home in Delaware, in light of *Daimler*.").

### III. Mylan Pharma Has Consented to the Jurisdiction of Delaware Courts

Plaintiffs next argue that this Court may exercise general jurisdiction over at least Mylan

Pharma as a result of that entity's compliance with Delaware's registration statute. That is,

Mylan Pharma's decision to register to do business in Delaware and, as Delaware requires,

appoint an agent here to accept service of process, has the consequence that Mylan Pharma has

consented to the jurisdiction of the courts in Delaware. Mylan Pharma disagrees, arguing that

registration to do business in a state "is of no jurisdictional consequence," for reasons including

that Mylan Pharma has registered to do business in 22 states (including Delaware), and it cannot

be "at home" in all 22 states. (D.I. 12 at 2, 8-9 (citing *Daimler*, 134 S. Ct. at 762 n.20 ("A

corporation that operates in many places can scarcely be deemed at home in all of them."))) On

this dispute, the undersigned Judge sides with Plaintiffs.

"Because the requirement of personal jurisdiction represents first of all an individual

right, it can, like other such rights, be waived." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites

de Guinee*, 456 U.S. 694, 704 (1982). As the Supreme Court has explained:

> In sum, the requirement of personal jurisdiction may be
> intentionally waived, or for various reasons a defendant may be
> estopped from raising the issue. These characteristics portray it for
> what it is – a legal right protecting the individual. The plaintiff's
> demonstration of certain historical facts may make clear to the
> court that it has personal jurisdiction over the defendant as a matter
> of law – *i.e.*, certain factual showings will have legal consequences
> – but this is not the only way in which the personal jurisdiction of
> the court may arise. ***The actions of the defendant may amount to
> a legal submission to the jurisdiction of the court, whether
> voluntary or not.***

*Id.* at 704-05 (emphasis added); *see also Capriotti's Sandwich Shop, Inc. v. Taylor Family

Holdings, Inc.*, 857 F. Supp. 2d 489, 499 (D. Del. 2012) ("It is well settled that the requirement

15

of personal jurisdiction is intended to protect a defendant's liberty interests. Because the defense

is a personal right, it may be obviated by consent or otherwise waived.") (internal citation and

quotation marks omitted).

Moreover, "[a] variety of legal arrangements have been taken to represent express or

implied consent to the personal jurisdiction of [a] court." *Ins. Corp. of Ir.*, 456 U.S. at 703. In

particular, the Supreme Court "has upheld state procedures which find constructive consent to

the personal jurisdiction of the state court in the voluntary use of certain state procedures." *Id.* at

704 (citing *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938); *Chicago Life Ins. Co. v. Cherry*, 244

U.S. 25, 29-30 (1917)). Importantly, "'*[w]hat acts of the defendant shall be deemed a*

*submission to [a court's] power is a matter upon which States may differ*.'" *Ins. Corp. of Ir.*,

456 U.S. at 704 (emphasis added) (quoting *Chicago Life Ins.*, 244 U.S. at 29-30). Even after

*International Shoe*, assessing whether a corporation may be held to have consented to the

personal jurisdiction of the courts of a particular state is a matter to be determined by

examination of the law of that state.[12]

One manner in which a corporation may be deemed to have consented to the jurisdiction

of the courts in a particular state is by complying with the requirements imposed by that state for

registering or qualifying to do business there. Nearly a century ago, in *Pennsylvania Fire*

*Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 94 (1917), the Supreme Court

stated that "there would be . . . little doubt" as to the existence of personal jurisdiction by a

---

[12]Thus, Mylan's suggestion that Plaintiffs' position on consent to general jurisdiction
cannot be correct, since adoption of this position would undermine uniformity in the
administration of patent laws (*see, e.g.*, Tr. at 15-16), is unpersuasive. After *Daimler*, as before,
states are free to vary in their laws relating to jurisdiction. *See generally Daimler*, 134 S. Ct. at
753 ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction
over persons.").

16

state's courts over a corporation that appointed an agent to accept service of process in that state

when the state's supreme court had interpreted the statute requiring such an appointment to

constitute such consent, and the statute itself might "rationally be held to go to that length." *See*

*also Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 175 (1939) ("'[S]tate legislation

and consent of parties may bring about a state of facts which will authorize the courts of the

United States to take cognizance of a case.'") (quoting *Ex parte Schollenberger*, 96 U.S. 369,

377 (1877)).

In *Robert Mitchell Furniture Co. v. Selden Breck Construction Co.*, 257 U.S. 213 (1921),

the Supreme Court clarified the rationale and scope of *Pennsylvania Fire*.

> The purpose in requiring the appointment of such an agent is
> primarily to secure local jurisdiction in respect of business
> transacted within the State.  Of course when a foreign corporation
> appoints one as required by statute it takes the risk of the
> construction that will be put upon the statute and the scope of the
> agency by the State Court. . . . ***Unless the state law either***
> ***expressly or by local construction gives to the appointment a***
> ***larger scope, we should not construe it to extend to suits in***
> ***respect of business transacted by the foreign corporation***
> ***elsewhere . . . .***

*Id.* at 215-16 (internal citation omitted).

Consistent with *Pennsylvania Fire* and its progeny, the Third Circuit upheld the

constitutionality of Pennsylvania's registration statute, which expressly treated registration to do

business in Pennsylvania as consent to the jurisdiction of Pennsylvania's courts over suits against

the registering corporation. *See Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991).  The

corporate registration statute at issue in *Bane*, 15 Pa. Stat. Ann. 2004(6) (Purdon 1967) (repealed

1988), required the "designation of the Secretary of the Commonwealth . . . as the true and lawful

attorney of the corporation upon whom all lawful process in any action against it may be served

. . . [with] the same legal force and validity as if served on the corporation . . . ." *Bane*, 925 F.2d at 640. The Pennsylvania legislature had explicitly established that the scope of consent under this provision extended to general jurisdiction. *See id.* (quoting 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(i) (1990)). In finding Pennsylvania's statutory scheme to be constitutional, the Third Circuit observed that "[c]onsent is a traditional basis for assertion of jurisdiction long upheld as constitutional." *Bane*, 925 F.2d at 641; *see also Davis v. Smith*, 253 F.2d 286, 288-89 (3d Cir. 1958) (finding that appointment of agent in Pennsylvania constituted waiver of venue privilege, because "[e]ven though a statute may require the designation of an agent to receive process, such designation is still deemed a voluntary act evidencing consent to the suit").

The Federal Circuit, whose interpretation on this point will be governing in patent cases like this one, has not addressed the constitutionality of treating registration to do business in a state as consent to the jurisdiction of courts in that state. (*See* Tr. at 20) Two other courts of appeals that have addressed the issue have upheld the constitutionality of such constructions. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199-1200 (8th Cir. 1990) (upholding general jurisdiction based on statutory interpretation of Minnesota Supreme Court and noting that "[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts"); *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984) (upholding statutory consent to personal jurisdiction based on "natural reading" of relevant New Hampshire statute and explaining that "[i]t is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority"). Two additional circuits appear to agree with the principle that a state may

18

condition doing business in that state on an agreement to submit to the general jurisdiction of the courts of that state – although the statutes these circuits were analyzing did not, the courts found, amount to such consent. *See King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 576, 578 (9th Cir. 2011) ("[F]ederal courts must, subject to federal constitutional restraints, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process. . . . [T]he Montana law regarding appointment of an agent for service of process does not, standing alone, subject foreign corporations to jurisdiction in Montana for acts performed outside of Montana, at least when the corporations transact no business in the state."); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) ("No Texas state court decision has held that this provision acts as a consent to jurisdiction over a corporation in a case such as ours – that is where Plaintiffs are non-residents and the defendant is not conducting substantial activity within the state.").

As far as the Court is aware, only two circuits appear to have held that a state registration requirement cannot be the basis for finding consent to general jurisdiction (and one did so years before the Supreme Court's decision in *Insurance Corp. of Ireland*). *See Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) ("Registering to do business is a necessary precursor to engaging in business activities in the forum state. However, it cannot satisfy . . . standing alone . . . the demands of due process. Such an interpretation of the Indiana registration statute would render it constitutionally suspect. . . ."); *Ratliffe v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another. The principles of due process require a firmer

19

foundation than mere compliance with state domestication statutes.").

Plaintiffs' consent argument rests on Delaware's registration statute, which provides:

> All process issued out of any court of this State, all orders made by
> any court of this State, all rules and notices of any kind required to
> be served on any foreign corporation which has qualified to do
> business in this State *may be served on the registered agent of the
> corporation designated in accordance with § 371 of this title*, or,
> if there be no such agent, then on any officer, director or other
> agent of the corporation then in this State.

8 Del. C. § 376 (emphasis added). In turn, Section 371 provides, in pertinent part, that:

> [n]o foreign corporation shall do any business in this State . . . until
> it . . . shall have filed . . . [a] statement executed by an authorized
> officer of each corporation setting forth . . . the name and address
> of its registered agent in this State . . . .[[13]]

While neither section 371 nor section 376 expressly addresses whether registration to do

business in Delaware constitutes consent to the general jurisdiction of courts in Delaware, this

has long been the definitive judicial interpretation of these statutes. In 1988, the Delaware

Supreme Court decided *Sternberg v. O'Neil*, in which it unambiguously held:

> Section 376 does not in [its] terms limit the amenability of service
> of a qualified corporation to one which does business in Delaware
> or with respect to a cause of action arising in Delaware. By the
> generality of its terms, a foreign corporation qualified in Delaware
> is subject to service of process in Delaware *on any transitory
> cause of action*. Express consent to jurisdiction by a foreign
> corporation takes the form of an appointment of a statutory agent to
> receive service of process in compliance with the statutory
> requirements of the state in which the corporation desires to do
> business. *A corporation that authorizes an agent to receive
> service of process in compliance with the requirements of a state
> statute, consents to the exercise of personal jurisdiction in any
> action that is within the scope of the agent's authority.*

---

[13]Delaware law further provides that the Secretary of State will serve as the designated
agent to accept service of process for a non-qualified foreign corporation that transacts business
in Delaware. *See* 8 Del. C. §§ 376, 382.

550 A.2d 1105, 1115-16 (Del. 1988) (emphasis added; internal quotation marks omitted).  In this

way, *Sternberg* held that a corporation qualified to do business in Delaware, which requires

appointment of an agent to accept service of process, has consented to the general jurisdiction of

the courts in the State of Delaware.[14]

Prior to *Daimler*, the District of Delaware had adhered to *Sternberg* and the Delaware

Supreme Court's interpretation of Delaware's registration statute.  In *Continental Casualty Co. v.*

*American Home Assurance Co.*, 61 F. Supp. 2d 128 (D. Del. 1999), now-retired Judge Farnan

wrote:

> Both the United States Supreme Court and the Supreme Court of
> Delaware have held that a foreign corporation which authorizes an
> agent to receive service of process in compliance with the
> requirements of a state registration statute has consented to the
> exercise of personal jurisdiction in that state, even with regard to
> causes of action that do not arise from events or transactions
> occurring within that state.

*Id.* at 129-30 & n.3 (citing *Penn. Fire*, 243 U.S. at 95; *Sternberg*, 550 A.2d at 1108-12).  The

parties have not cited, nor has the Court through its own research discovered, any decision prior

to *Daimler* which rejected or even questioned the constitutionality of *Sternberg*.

Given the analysis above, the undersigned Judge concludes that this Court may exercise

general jurisdiction over Mylan Pharma based on Mylan Pharma's consent, consent which Mylan

Pharma gave when it complied with the Delaware business registration statute by appointing a

registered agent in Delaware to accept service of process.  It is undisputed that Mylan Pharma is

and has been qualified to do business in Delaware since 2010.  (*See* D.I. 15 at 5; Tr. at 55)  As

---

[14]Mylan does not dispute that in *Sternberg* the Delaware Supreme Court was absolutely
clear as to how it interprets the Delaware registration statute.  (*See* Tr. at 18)

required by Delaware law, Mylan Pharma has appointed a registered agent in Delaware who is authorized to accept service of process on behalf of the company. (*See* D.I. 1 at ¶ 7; D.I. 16, Ex. B) By the time Mylan Pharma chose to register in Delaware in 2010, it was well established – by *Sternberg* and its progeny, including this Court's *Continental Casualty* decision – that such compliance constitutes consent to the general jurisdiction of the state and federal courts located in Delaware. *Cf. Rockefeller University v. Ligand Pharms. Inc.*, 581 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) ("In maintaining an active authorization to do business and not taking steps to surrender it as it has a right to do, defendant was on constructive notice that New York deems an authorization to do business as consent to jurisdiction."). Delaware's statute can, at minimum, be "rationally" held to treat compliance as consent. Hence, Mylan Pharma has consented to the jurisdiction of the District of Delaware, exercise of general jurisdiction over Mylan Pharma does not offend Mylan Pharma's right to due process, and the motion to dismiss must be denied as to Mylan Pharma.[15]

---

[15]Because Mylan Pharma has consented to this Court's jurisdiction, it is unnecessary to consider whether Mylan Pharma has sufficient "minimum contacts" with Delaware. *See, e.g.*, *Bancorp Bank v. Blackburn*, 2014 WL 4100895, at *3 (D. Del. Aug. 20, 2014) ("Consent to personal jurisdiction renders unnecessary a traditional jurisdictional analysis."); *Capriotti's Sandwich Shop*, 857 F. Supp. 2d at 500-01 (same); *Cont'l Cas. Co.*, 61 F. Supp. 2d at 130 n.3 ("In *Sternberg* [550 A.2d at 1113], the Delaware Supreme Court held that where a foreign corporation has expressly consented to the jurisdiction of a state by registration, due process is satisfied and an examination of 'minimum contacts' to find implied consent is unnecessary.").

Mylan points out that the *Sternberg* Court itself undertook a due process analysis, despite stating that this inquiry was unnecessary, and ultimately found sufficient minimum contacts on which to base the exercise of jurisdiction there. *See* 550 A.2d at 1117 ("[D]espite our conclusion that a minimum contact analysis is not required, in view of the broad language in *Shaffer*, we will examine [plaintiff's] claim according to the standards enunciated in *International Shoe*."). The defendant in *Sternberg*, of course, did not have the benefit of the Delaware Supreme Court's analysis in *Sternberg* at the time it was deciding to register to do business in Delaware. The same potential prejudice, due to arguable lack of notice, is not present here, given the 22-year gap between the *Sternberg* decision and Mylan Pharma's decision to register in Delaware.

Mylan Pharma challenges this conclusion based on *Daimler*. In Mylan Pharma's view, *Daimler* narrowed the due process analysis for general jurisdiction, rendering *Sternberg* unconstitutional. (*See* Tr. at 58 (Mylan arguing that pre-*Daimler* cases "were decided when the assumption was that there was this breadth of general jurisdiction that does not occur anymore")) Mylan Pharma reads *Daimler* as broadly standing for the proposition that due process requires *all* exercises of general jurisdiction, including those based on consent, to be limited to a "corporation's place of incorporation and principal place of business" or, in exceptional circumstances, equivalent locales where the corporation is "at home." Under this reasoning, merely registering to do business in a state and appointing an agent for service of process cannot be held to confer general jurisdiction.

It is the view of the undersigned Judge that, to the contrary, *Daimler* does not eliminate consent as a basis for a state to establish general jurisdiction over a corporation which has appointed an agent for service of process in that state, as is required as part of registering to do business in that state. (*See* Tr. at 39 (Plaintiffs arguing: "*Daimler* doesn't address what happens if somebody says, well, I'm prepared to forego that defense, to give up my right not to be sued here and to register to do business.")) Mylan Pharma concedes, as it must, that *Daimler* does not expressly address consent. (*See* Tr. at 17) Indeed, in the entire opinion in *Daimler*, there is but a single, passing reference to the concept of consent: "[The Court's] 1952 decision in *Perkins v. Benguet Consol. Mining Co.*[, 342 U.S. 437 (1952),] remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has *not consented* to suit in the forum." 134 S. Ct. at 755-56 (emphasis added). In this way, *Daimler* distinguishes between consensual and non-consensual bases for jurisdiction. It preserves what has long been the case:

23

that these are two distinct manners of obtaining jurisdiction over a corporation. Consistent with *Daimler*, it remains the law that general jurisdiction may be established by showing that a corporation is "at home" in the sense described in detail in *Daimler*, or separately general jurisdiction may be established by a corporation's consent to such jurisdiction. *Daimler* is directed to the former situation and has nothing to say about the latter scenario.

In support of its interpretation of *Daimler*, Mylan Pharma contends that "*International Shoe* changed the focus of the jurisdictional inquiry from one based on a defendant's 'physical presence' in the forum State to one based on 'substantial contacts,' 'fair play and substantial justice,' and 'fundamental fairness.'" (D.I. 11 at 10) However, the undersigned Judge finds that the conclusion reached in this opinion is in fact consistent with *International Shoe*, which did not consider the traditional route to personal jurisdiction of consent, as there the defendant "had no agent within the state upon whom service could be made." 326 U.S. at 312. Rather, *International Shoe* described how a corporation may have sufficient "presence" in a forum to give rise to personal jurisdiction over it "even though *no consent* to be sued or authorization to an agent to accept service of process has been given." *Id.* at 318 (emphasis added). Hence, in *Insurance Corp. of Ireland*, the Supreme Court described *International Shoe* (and related cases) as establishing "minimum contacts" that are "a constitutional prerequisite to the exercise of *in personam* jurisdiction over an *unconsenting* defendant." 456 U.S. at 712 (emphasis added) (citing *Int'l Shoe*, 326 U.S. at 310).[16]

_____

[16]Other decisions are consistent with the long-standing distinction between consent and non-consent as separate bases for personal jurisdiction. *See Perkins*, 342 U.S. at 443 ("[T]he doing of business in a state by a foreign corporation, *which has not appointed a statutory agent upon whom service of process against the corporation can be made in that state or otherwise consented* to service of summons upon it in actions brought in that state, will not make the corporation subject to service of summons in an action in personam brought in the courts of that

Aside from *International Shoe*, none of the cases which the Court has cited in reaching its holding that Mylan Pharma has consented to this Court's jurisdiction is cited in *Daimler*. The Supreme Court in *Daimler* did not reference *Insurance Corp. of Ireland*, *Adam*, *Chicago Life Insurance*, *Pennsylvania Fire*, *Neirbo*, *Ex parte Schollenberger*, or *Robert Mitchell Furniture*. It follows that *Daimler* did not overrule or even criticize these precedents.[17]

Moreover, *Daimler* does not address whether personal jurisdiction is an individual right, whether it may therefore be waived, whether waiver may occur by consent, or whether consent is assessed as a matter of state law. *Daimler* does not indicate whether MBUSA had appointed an agent to accept service of process in California. This may be due to California courts having found that such registration does not suffice to establish personal jurisdiction. *See, e.g.*, *World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of N.Y., Inc.*, 2011 WL 5118525, at *4 (N.D. Cal. Oct. 28, 2011) ("California courts, however, have declined to find that a party has consented to a state's jurisdiction merely by appointing an in-state agent for service of

---

state to enforce a cause of action in no way related to the business or activities of the corporation in that state.") (emphasis added). Similarly, in *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977), the Court distinguished between "consent to jurisdiction in the State" – in the form of acceptance of a board directorship pursuant to a state statute providing that such acceptance constitutes consent – and the situation in which a party "had no reason to expect to be haled before a Delaware court." Given the fundamental distinction between consent and non-consent as bases for exercising jurisdiction, a distinction found even in *Shaffer*, the undersigned Judge does not read the Supreme Court's seemingly broad statement in *Shaffer*, 433 U.S. at 212 – that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny" – to apply to situations in which a defendant has consented to jurisdiction, or has otherwise waived the requirement of personal jurisdiction.

[17]Importantly, these are largely the same cases on which the Delaware Supreme Court relied in *Sternberg* – and that decision has not been revisited, by the Delaware Supreme Court or the Delaware General Assembly, in the time since *Daimler* or even in the decades since *Sternberg* was handed down. It is also noteworthy that the Third Circuit's decision in *Bane* remains precedent, even after *Daimler*.

process.") (citing *DVI, Inc. v. Super. Ct.*, 104 Cal. App. 4th 1080, 1095 (2002); *Gray Line Tours v. Reynolds Elec. & Eng'g Co.*, 193 Cal. App. 3d 190, 193-95 (1987)). Regardless of the reason for the lack of discussion of these points, that absence further demonstrates that *Daimler* has nothing to do with consent as a basis for personal jurisdiction.[18]

The undersigned Judge is aware, of course, that a fellow member of this Court has reached a contrary conclusion on this point. In *AstraZeneca*, Judge Sleet, addressing the same issue presented here, concluded that, after *Daimler*, exercising general jurisdiction over Mylan Pharma based on consent is untenable, because, "[i]n light of the holding in *Daimler* . . . the Delaware Supreme Court's decision in *Sternberg* can no longer be said to comport with federal due process." 2014 WL 5778016, at \*5. Judge Sleet stated that in *Daimler*, "the Supreme Court rejected the idea that a company could be haled into court merely for doing business in a state," because "[s]uch a theory . . . would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* (quoting *Daimler AG*, 134 S. Ct. at 761-62) (internal quotation marks omitted).

---

[18]Consistent with this view that jurisdiction by consent has continuing vitality is the recent action of the Second Circuit, in remanding two cases to the Southern District of New York, to consider whether a party which post-*Daimler* was not "at home" in New York might, nonetheless, be found to have consented to jurisdiction by virtue of registering to do business in New York. *See Gucci America Inc. v. Li*, 2014 WL 4629049 (2d Cir. Sept. 17, 2014); *see also Tiffany (NJ) LLC v. China Merchants Bank*, 2014 WL 4627662, at \*3 (2d Cir. Sept. 17, 2014), *as amended* Sept. 23, 2014 ("[A]s in *Gucci*, the district court's exercise of jurisdiction here rested on the only recently abrogated principle that the presence of the Banks' branches in New York subjected them to general jurisdiction. Accordingly, the district court had no reason to consider, or to develop the record as to, whether it could properly assert specific jurisdiction over the Banks, or whether the Banks consented to jurisdiction by applying for authorization to conduct business in New York and designating the New York Secretary of State as their agent for service of process.").

However, in the view of the undersigned Judge, when courts have clearly held that compliance with a state's registration statute confers general jurisdiction, corporations have the requisite notice to enable them to structure their conduct so as to be assured where they will, and will not, be subject to suit. The problem identified in *Daimler* only arises when continuous and systematic contacts are used to assess whether a corporation is "at home" in a forum state, which requires a corporation to predict what level of contacts a court will find sufficient. When, instead, the basis for jurisdiction is the voluntary compliance with a state's registration statute, which has long and unambiguously been interpreted as constituting consent to general jurisdiction in that state's courts, the corporation can have no uncertainty as to the jurisdictional consequences of its actions.

Judge Sleet further concluded in *AstraZeneca* that "[f]inding mere compliance with such statutes sufficient to satisfy jurisdiction would expose companies with a national presence (such as Mylan) to suit all over the country, a result specifically at odds with *Daimler*." 2014 WL 5778016, at *5. Plainly, today's holding is at one level in tension with the holding in *Daimler* that it would be "unacceptably grasping" to find general jurisdiction over a corporation "in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *See Daimler*, 134 S. Ct. at 761 (internal quotation marks omitted). It seems an odd result that while there is not general jurisdiction over a corporation in every state in which the corporation does business, there may be general jurisdiction over a corporation in every state in which that corporation appoints an agent to accept service of process as part of meeting the requirements to register to do business in that state. But if consent remains a valid basis on

27

which personal jurisdiction may arise – and the undersigned Judge concludes that *Daimler* did

not change the law on this point – then this result, though odd, is entirely permissible.

In short, the undersigned Judge does not believe that *Daimler* meant, *sub silentio*, to

eliminate consent as a basis for jurisdiction. Such a holding would threaten to fundamentally

alter the personal jurisdiction defense from a waivable to a non-waivable right, a characteristic of

the defense that was not before the *Daimler* Court and is not explicitly addressed in its opinion.

The scope of a corporation's right to consent to jurisdiction in the courts of a particular state has

never been thought to be limited to any certain number of states. It may well be that a

corporation will voluntarily consent – whether by compliance with state registration statutes, by

contract,[19] or by some other means – to the jurisdiction of courts in many more states than the

number of states in which that corporation might be found to be "at home" for purposes of

general jurisdiction.

Judge Sleet's rejection of consent as a basis for general jurisdiction over Mylan Pharma is

well-reasoned and may well be the correct view. Nevertheless, for the reasons explained in this

Opinion, the undersigned Judge has reached a different conclusion. Accordingly, Mylan

Pharma's motion to dismiss will be denied.[20]

---

[19]Mylan Pharma attempts to distinguish consent by compliance with Delaware's registration statute from consent by contract, insisting, "voluntary, contractual consent is significantly different than conferring jurisdiction based on a registration statute that is silent with respect to jurisdiction." (D.I. 17 at 5 n.5; *see also* Tr. at 63-65 ("[T]he contract analysis. If we put a provision in there, it's consent to specific jurisdiction.")) The Court is not persuaded there is a meaningful difference between the voluntary nature of consent found in a private contract and consent based on compliance with a statute that has long and clearly been interpreted to constitute consent.

[20]The Court takes judicial notice of the fact that, on December 17, 2014, Judge Sleet certified an interlocutory appeal of his order in *AstraZeneca* to the Federal Circuit. (*See AstraZeneca AB v. Aurobindo Pharma Ltd.*, C.A. No. 14-664-GMS D.I. 103) As far as this

28

## IV.  Mylan Inc. Has Not Consented to the General Jurisdiction of this Court

Mylan Inc. has not registered to do business in Delaware or appointed a registered agent

to accept service of process on its behalf. Yet Plaintiffs assert that if personal jurisdiction exists

over Mylan Pharma on a consent theory, personal jurisdiction must also exist over Mylan Inc.

by virtue of it having allegedly caused Mylan Pharma, its wholly-owned subsidiary, to register in

Delaware and to appoint an agent to accept service of process here. This takes consent too far; it

would effectively manufacture consent out of a lack of consent.

As the Delaware Supreme Court stated in *Sternberg*, "[j]urisdiction over a wholly owned

Delaware subsidiary does not automatically establish jurisdiction over the parent corporation in

any forum . . . both the parent and the subsidiary corporation's contacts with the forum state must

be assessed individually." 550 A.2d at 1119-20 (emphasis omitted). Even assuming Plaintiffs

could prove that Mylan Inc. directed Mylan Pharma to register to do business in Delaware, this

contact with Delaware (in addition to the others discussed previously in connection with the

general jurisdiction analysis above) would neither render Mylan Inc. "at home" in Delaware nor

constitute Mylan Inc's consent to general jurisdiction here. Thus, it is insufficient to give rise to

general jurisdiction over Mylan Inc. in Delaware.[21]

---

Court is aware, Mylan's request to pursue its interlocutory appeal is pending before the Federal
Circuit. The undersigned Judge wholeheartedly agrees with Judge Sleet that the existence of
personal jurisdiction in an ANDA case in a post-*Daimler* world is an important question of first
impression that will be (and has been) raised in many pending ANDA cases. (*See id.* at 1 n.1)

[21]As the Supreme Court noted in *Daimler*, 134 S. Ct. at 758-59 & n.13, it is not clear
whether agency theory is available in the context of general jurisdiction at all (as opposed to
specific jurisdiction). There is, however, authority within the Third Circuit that would support
this as a basis for general jurisdiction. *See generally Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290,
300 (3d Cir. 2008) ("To obtain general jurisdiction over Chevron in Pennsylvania based on
Texaco's contacts, Kehm would need to show that Chevron controls Texaco."); *Applied
Biosystems, Inc. v. Chruachem, Ltd.*, 772 F. Supp. 1458, 1469 (D. Del. 1991) (stating that general

## V.     This Court Has Specific Jurisdiction over Mylan Pharma

As a final and independent basis for this Court to exercise personal jurisdiction over

Mylan Pharma and Mylan Inc., Plaintiffs assert specific jurisdiction.  The Court agrees that

Plaintiffs have met their burden to establish that this Court may exercise specific jurisdiction as

to Mylan Pharma.[22]

"Specific jurisdiction refers to the situation in which the cause of action arises out of or

relates to the defendant's contacts with the forum. . . .  It contrasts with general jurisdiction, in

which the defendant's contacts have no necessary relationship to the cause of action." *Beverly*

*Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 n.10 (Fed. Cir. 1994) (internal

citations and quotation marks omitted); *see also Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155

(Del. Super. Ct. 1997).  Assessing whether specific jurisdiction is present requires an inquiry into

"whether there was some act by which the defendant purposefully avail[ed] itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its

laws." *Goodyear*, 131 S. Ct. at 2854 (internal quotation marks omitted).  That is, the inquiry is

"trained on the relationship among the defendant, the forum, and the litigation." *Daimler*, 134 S.

Ct. at 758 (internal quotation marks omitted).  Thus, a defendant may be constitutionally haled

into court under a theory of specific jurisdiction, consistent with the defendant's right to due

process, if: "(1) . . . the defendant purposefully directed activities at residents of the forum; (2) . .

. the claim arises out of or relates to those activities; and (3) . . . assertion of personal jurisdiction

---

jurisdiction under section 3104(c)(4) of Delaware long-arm statute may apply to defendant or its
agent).

[22]As with the general jurisdiction analysis, the Court need not analyze the specifics of
Delaware's long-arm statute, as Mylan is not arguing the statutory prerequisites are unmet. (*See*
Tr. at 4)

is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Circ. 2010).

Having undertaken the requisite analysis here, the Court finds that it may, consistent with Mylan Pharma's due process rights, exercise specific jurisdiction over Mylan Pharma in this case. Plaintiffs' claims in this litigation arise out of and relate to Mylan Pharma's activities that are, and will be, directed to Delaware. This suit arises from Mylan's ANDA Filing, which is a prerequisite to obtaining FDA approval, which is necessary in order to sell Mylan's Generic Product in the United States, including in Delaware. More directly, this lawsuit arises from Mylan Pharma's sending the Mylan Notice Letter to Plaintiffs, including to Acorda, a Delaware corporation. At the time Mylan Pharma sent the Mylan Notice Letter to Acorda, Acorda had already initiated litigation in Delaware to enforce the Ampyra® patents against efforts to introduce generic Ampyra® to the U.S. market. Therefore, when it sent the Mylan Notice Letter to Acorda, Mylan Pharma knew or should have known that: (i) Acorda is a Delaware corporation; (ii) Acorda had already begun litigating the Ampyra® patents in the District of Delaware by filing suit against another ANDA filer (Actavis) here; (iii) Acorda would file suit against Mylan Pharma within 45 days of receiving the Mylan Notice Letter; and (iv) to obtain the efficiencies of coordinated litigation in a single district, Plaintiffs would almost certainly sue Mylan Pharma in Delaware.

Mylan Pharma has directed other activities at Delaware, including registering to do the business of "[p]harmaceutical manufacturing, distribution and sales" here, appointing a registered agent to accept service of process here, and registering with the Delaware Board of Pharmacy as a "Pharmacy/Wholesale" and "Distributor/Manufacturer CSR." (*See* D.I. 1 at ¶¶ 7,

9; D.I. 15 at 20; D.I. 16, Exs. A & B)  Mylan Pharma has also been a frequent litigant in the

District of Delaware, in precisely the type of case now before the Court – ANDA litigation – and

its business model is expressly dependent on the certainty of its participation in such litigation.

(*See* D.I. 1 at ¶ 11)  Indeed, Mylan Pharma has litigated over 50 cases in Delaware.  (*Id.* at ¶ 17)[23]

Exercising personal jurisdiction over Mylan Pharma is entirely consistent with the

principles underlying specific jurisdiction, as emphasized by the Supreme Court over decades,

from *International Shoe* up through and including in *Daimler*.  For instance, as reiterated in

*Daimler*:

> The canonical opinion in this area remains *International Shoe*, in
> which we held that a State may authorize its courts to exercise
> personal jurisdiction over an out-of-state defendant if the defendant
> has certain minimum contacts with [the State] such that the
> maintenance of the suit does not offend ***traditional notions of fair
> play and substantial justice***.

134 S. Ct. at 754 (emphasis added; internal citation and quotation marks omitted).

Fundamentally, for all of the reasons explained above, no traditional notions of fair play and

substantial justice are offended by exercising specific jurisdiction over Mylan Pharma.  The lack

of unfairness to Mylan Pharma from having to litigate its efforts to obtain FDA approval of

---

[23]The record in *AstraZeneca* established that Mylan Pharma had initiated at least six suits
in the District of Delaware over the past two decades and had defended here against many more
suits.  *See* 2014 WL 5778016, at *4.  The Court understands that "prior appearance [does] ***not
necessarily*** waive the personal jurisdiction requirement in future actions, nor constitute related
business conduct within the jurisdiction."  *Rozenblat v. Sandia Corp.*, 2006 WL 678923, at *3
(Fed. Cir. Mar. 17, 2006) (emphasis added); *see also In re Rosuvastatin Calcium Patent
Litigation*, 2010 WL 661599, at *2 (D. Del. Feb. 19, 2010) ("[T]he Court is not persuaded that
Apotex's participation, primarily as a defendant, in litigation in this District is ***sufficient*** to
support the exercise of general jurisdiction," although not stating such experience is entirely
irrelevant) (emphasis added).  With respect to specific jurisdiction, the Court does not view
Mylan Pharma as having waived its personal jurisdiction defense; the Court simply finds that
Mylan Pharma has not prevailed on that defense.

Mylan's Generic Product in the District of Delaware is particularly evident from the chronology

of events relevant to this litigation, recited above, including particularly that when Mylan Pharma

sent the Mylan Notice Letter, Acorda had already initiated Ampyra® related litigation in

Delaware.

In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court explained:

> The Due Process Clause, by ensuring the orderly administration of
> the laws, gives *a degree of predictability* to the legal system that
> *allows potential defendants to structure their primary conduct*
> *with some minimum assurance as to where that conduct will and*
> *will not render them liable to suit*.

444 U.S. 286, 297 (1980) (emphasis added; internal citations and quotation marks omitted).

Even back in January 2014, when Mylan Pharma submitted Mylan's ANDA Filing, there was a

high degree of predictability that Acorda, a Delaware corporation, would sue Mylan Pharma in

Delaware to enforce the Ampyra® patents.[24] Mylan Pharma has long been able to structure its

primary conduct – developing and marketing generic drug products, which almost always

requires parallel patent litigation (*see* D.I. 16, Ex. E at 5 ("We [i.e., Mylan] expect to achieve

growth in our U.S. business by launching new products for which we may attain . . . [FDA] first-

---

[24]A published report recently found that nearly 41% of all ANDA cases filed over the last
five years have been filed in the District of Delaware. *See* "Hatch-Waxman/ANDA Litigation
Report," *Lex Machina*, 1 (Nov. 6, 2014) (hereinafter, the "Lex Machina Report"), *available at*
https://lexmachina.com/2014/11/lex-machina-releases-hatch-waxman-anda-litigation-report/.
The Lex Machina Report found that between 2009 and September 2014, 1,671 new ANDA cases
were filed nationwide, and 678 of these cases were filed in Delaware. Indeed, the Lex Machina
Report further found that in the same five-year period nearly eighty percent of all ANDA cases
were filed in just three Districts: Delaware (678), New Jersey (481), and the Southern District of
New York (148). This data further illustrates the predictability of Mylan Pharma ending up
litigating the instant case in Delaware.

to-file status with Paragraph IV certification.")[25] – with substantial assurance that this conduct

will regularly render Mylan Pharma liable to suit in the District of Delaware. At bottom, Mylan

Pharma's conduct has been "such that [it] should ***reasonably anticipate being haled into court***"

here in the District of Delaware. *World-Wide Volkswagen Corp.*, 444 U.S. at 297 (emphasis

added); *see also AstraZeneca*, 2014 WL 5778016, at \*7 ("Mylan [Pharma] cannot plausibly

argue that it could not 'reasonably anticipate being haled into court' in Delaware when patent

litigation is an integral part of a generic drug company's business.").

    The Court reaches the same conclusion by considering the factors described in *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), as being pertinent to determining "whether

assertion of personal jurisdiction is 'reasonable and fair'" in a particular case. Applying those

factors here, the Court concludes that: (i) "the burden on the defendant" to litigate in the District

of Delaware is minimal, as demonstrated by Mylan Pharma's frequent presence in Delaware and

its failure to articulate any prejudice (beyond purported injury to its constitutional rights)

attendant to litigating here; (ii) the forum state's interest in adjudicating the dispute, which is

significant given that Acorda is a Delaware corporation seeking to enforce its patents and that

this Plaintiff has ongoing related litigation pending in this Court; (iii) Plaintiffs' interest in

obtaining convenient and effective relief, which also favors Delaware, given that Acorda is a

small company facing eight generic challenges to its principal product (*see* Tr. at 31); and

---

[25]As Judge Sleet described in *AstraZeneca*, "Another peculiarity of the Hatch-Waxman
Act is that it builds patent litigation into the FDA approval process." 2014 WL 5778016, at \*6.

(iv) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which again strongly favors keeping the case against Mylan Pharma here,[26] rather than burdening another district court and another district judge with issues that are already before this Court (e.g., construction of disputed claim terms in the Ampyra® patents and validity of the Ampyra® patents).[27]

In *AstraZeneca*, Judge Sleet found that this Court has specific jurisdiction over Mylan Pharma in another ANDA case. One factual distinction between *AstraZeneca* and the instant case is that in *AstraZeneca* Mylan Pharma had mailed its paragraph IV certification letter to the plaintiff, AstraZeneca Pharmaceuticals LP ("AstraZeneca"), in Delaware, where AstraZeneca is both incorporated and has its principal place of business. *See* 2014 WL 5778016, at *1, 7. Here, there was no mailing by Mylan Pharma into Delaware. Instead, the Mylan Notice Letter was sent to Acorda in New York and to Alkermes in Ireland. (*See* Tr. at 24, 50) The undersigned Judge agrees with Judge Sleet that mailing a paragraph IV certification letter ***into*** Delaware is an additional activity directed at Delaware that should be considered in assessing whether this Court can exercise specific jurisdiction. It does not follow, however, that the absence of a mailing into Delaware eliminates the possibility of exercise of specific jurisdiction.

---

[26]None of the defendants in the other seven, related Ampyra® ANDA cases have challenged this Court's jurisdiction. (Tr. at 31) Hence, all seven of those cases will proceed here, regardless of whether the Mylan case remains here or not. If the Court were to dismiss the case against Mylan, it would not reduce the amount of litigation in federal courts. Instead, the case against Mylan would proceed in the Northern District of West Virginia, where Plaintiffs have already filed a protective action against both Mylan Defendants. (*See* Tr. at 28, 31)

[27]*Burger King*, 471 U.S. at 477, identifies a fifth factor – the "shared interest of the several States in furthering fundamental substantive social policies" – which seems to have no applicability here, but also does not disfavor the Court's exercise of specific jurisdiction over this case.

Moreover, because Acorda is a Delaware corporation, it seems proper to conclude that Acorda suffers "injury" in Delaware as a result of Mylan's ANDA Filing. Of course, identifying a physical place where Acorda is injured by an ANDA submission is difficult, as a corporation is not a natural person, *see Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 343 (2010), and as the infringement injury here is "highly artificial," *see Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990). Mylan argues this means that Acorda is not injured anywhere. (*See, e.g.*, Tr. at 60) But it is more logical to conclude that Acorda *is* injured, *somewhere*.[28] With the benefit of *Daimler*, and its explanation that a corporation is "at home" at least where it is incorporated, it seems logical to conclude that the state of incorporation is at least one place in which a corporation whose patents are artificially infringed by an ANDA filing is injured. For Acorda, that is Delaware.[29]

The Court recognizes, as Mylan emphasizes (*see, e.g.*, Tr. at 60-61), that Plaintiffs' contacts cannot be the *sole* basis for finding jurisdiction over Defendants. That does not, however, mean that an injury felt by a Delaware corporate citizen is entirely irrelevant to the specific jurisdiction inquiry. Such injury is felt in Delaware given that Delaware is one of the places at which a Delaware corporation is "at home."

---

[28] If the ANDA injury, artificial though it may be, were not felt somewhere, there would arguably not be a case or controversy, and there would then also not be subject matter jurisdiction. Mylan does not argue there is a lack of case or controversy among the parties here.

[29] The Court recognizes that there is pre-*Daimler* authority supporting the contention that "injury in a patent infringement action occurs not where the patent holder resides but where 'the infringing activity directly impacts on the interests of the patentee,' like the place of an infringing sale." *Pfizer Inc. v. Apotex, Inc.*, 2009 WL 2843288, at *3 n.5 (D. Del. Aug. 13, 2009) (quoting *Beverly Hills Fan*, 21 F.3d at 1571). In this ANDA case, there has not yet been an infringing sale, but if sales are eventually to be made they will be made nationwide, including in Delaware.

*Walden v. Fiore*, 134 S. Ct. 1115 (2014), which the Supreme Court decided shortly after *Daimler*, does not change this result. In *Walden*, the Court found a lack of specific jurisdiction over a law enforcement officer (in a *Bivens* tort action) who had no contacts with the forum state and whose conduct took place entirely outside of the forum state, even though the plaintiffs' alleged injury was felt entirely in the forum state. *Walden* dealt with natural persons experiencing a real injury, not corporations experiencing an artificial injury. Moreover, here Mylan Pharma has contacts with Delaware beyond its injuring a Delaware corporation – such as its registration to do business in Delaware, registration with the Delaware Board of Pharmacy, and its litigation history in Delaware. Hence, here, unlike in *Walden*, the "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor [is] based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 1123.

Finally, as noted by Judge Sleet in *AstraZeneca*, it appears that specific jurisdiction has traditionally been disfavored as a basis for finding personal jurisdiction in an ANDA case. *See AstraZeneca*, 2014 WL 5778016, at *6 (citing *Zeneca*, 173 F. 3d at 829 and *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 693 F. Supp. 2d at 420-21). Like Judge Sleet, the undersigned Judge does not view this as a bar to finding specific jurisdiction here. In a post-*Daimler* world, it may very well be that specific jurisdiction becomes a more prominent basis for exercising jurisdiction in ANDA cases.

Accordingly, the Court concludes that it may, consistent with the Due Process Clause, exercise specific jurisdiction over Mylan Pharma, which is a second basis for the Court to deny the motion to dismiss as to Mylan Pharma.

## VI.     The Court Will Permit Jurisdictional Discovery as to
##           Whether There Is Specific Jurisdiction Over Mylan Inc.

Plaintiffs contend that this Court may exercise specific jurisdiction over Mylan Inc. as well. To the extent Plaintiffs' theory is that the direct contacts among Mylan Inc., Delaware, and this lawsuit are sufficient to justify the exercise of specific jurisdiction over Mylan Inc., the Court disagrees. Unlike Mylan Pharma, Mylan Inc. is not registered to do business in Delaware and there is no allegation that Mylan Inc. was directly involved in the preparation or submission of Mylan's ANDA Filing. The only potentially relevant contacts among Mylan Inc., Delaware, and the instant lawsuit are Mylan Inc.'s involvement in other ANDA litigation (*see* D.I. 1 at ¶ 20), the incorporation of 20 Mylan Inc. subsidiaries in Delaware (*see* D.I. 15 at 17; D.I. 16, Ex E at 37-40), and the vast extent of Mylan Inc.'s presence in United States (*see* D.I. 1 at ¶ 19; D.I. 16, Ex. E at 5). These contacts, on their own, are insufficient to show that Mylan Inc. purposefully directed activities at Delaware and that Plaintiffs' claims arise out of or relate to those activities.

Plaintiffs alternatively contend that this Court can exercise specific jurisdiction over Mylan Inc. on the basis of an agency relationship between Mylan Inc. and Mylan Pharma, its wholly-owned subsidiary. Plaintiffs allege: "Defendants are agents of each other and/or work in concert with each other with respect to the development, regulatory approval, marketing, sale, and distribution of pharmaceutical products throughout the United States, including into Delaware," including with respect to Mylan's ANDA Filing at issue here. (D.I. 1 at 6) While "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent," *ACE & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 422-23 (D. Del. 2001), "[u]nder the agency theory, the court may attribute the actions of a subsidiary company to its parent where the

38

subsidiary acts on the parent's behalf or at the parent's direction," *Intellectual Ventures I LLC v. Nikon Corp.*, 935 F. Supp. 2d 787, 793 (D. Del. 2013) (quoting *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998)).  "When applying the agency theory, a court should focus its inquiry on the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement to the plaintiff's claim." *C.R. Bard*, 997 F. Supp. at 560; *see also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1464 (D. Del. 1991) ("[O]nly the precise conduct shown to be instigated by the parent is attributed to the parent . . . .") (internal quotation marks omitted); *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 384-85 (D. Del. 2009) (same).

Plaintiffs have alleged that Mylan Pharma's relevant contacts can be attributed to Mylan Inc.  Plaintiffs request that, if the Court concludes they have failed to meet their burden of establishing personal jurisdiction over either of the Defendants, the Court allow Plaintiffs to undertake jurisdictional discovery instead of dismissing Plaintiffs' claims.  (*See* D.I. 15 at 19)

Generally, "jurisdictional discovery should be allowed unless the plaintiffs' claim [of personal jurisdiction] is clearly frivolous." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (internal quotation marks omitted); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).  However, a court should not permit discovery as a matter of course simply because a plaintiff has named a particular party as a defendant. *See Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995).  Instead, before allowing jurisdictional discovery to proceed, "[t]he court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Id.* at 475.

39

Plaintiffs' allegation of an agency relationship between Mylan Inc. and Mylan Pharma is not clearly frivolous. In addition to the undisputed parent-subsidiary relationship, Plaintiffs have specifically alleged that Mylan Pharma's appointment of a registered agent for service of process in Delaware can be attributed to Mylan Inc. (*See* D.I. 1 at 6) This, taken together with allegations about Mylan Inc's 20 Delaware subsidiaries and nationwide distribution of products (*see* D.I. 16, Ex. E), at least suggests, with reasonable particularity, the possible existence of requisite contacts among Mylan Inc., Delaware, and this litigation.

Therefore, the Court will permit Plaintiffs to take limited jurisdictional discovery into whether the Court may exercise specific personal jurisdiction over Mylan Inc. based on an agency theory.[30]

## CONCLUSION

For the reasons stated above, the Court will deny the motion to dismiss as to Mylan Pharma. This Court has general jurisdiction over Mylan Pharma due to Mylan Pharma's consent, and it has specific jurisdiction over Mylan Pharma based on Mylan Pharma's relationship with Delaware and the particular circumstances of this ANDA litigation. With respect to Mylan Inc., this Court may not exercise general jurisdiction, because Mylan Inc. is not "at home" here and has not consented to general jurisdiction here. However, the Court will permit Plaintiffs to take limited jurisdictional discovery in order to determine whether the Court may exercise specific jurisdiction over Mylan Inc.

An appropriate Order follows.

---

[30]By separate Order the Court will solicit the parties' views as to the scope and timing of such jurisdictional discovery, as well as a procedure by which, following the completion of such discovery, Mylan Inc. may renew its motion to dismiss for lack of personal jurisdiction.

40